EVANSVILLE & H. TRACTION CO. v. HENDERSON BRIDGE CO.

(Circuit Court, W. D. Kentucky. December 24, 1904.)

1. STATES—STATUTE REGULATING USE OF INTERSTATE BRIDGE—LIMIT OF JURISDICTION.

A statute of Indiana cannot give a right to use a bridge across the Ohio river beyond low-water mark, which constitutes the boundary line of the state.

2. FEDERAL COURTS—JURISDICTION—ENFORCING RIGHTS UNDER STATUTE OF ANOTHER STATE.

A federal court in Kentucky cannot enforce rights given by a statute of Indiana with respect to the use of so much of a bridge across the Ohio river as is situated within the state of Indiana.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 806, 807.]

3. RAILROADS—KENTUCKY STATUTES—RIGHTS OF FOREIGN CORPORATION.

Const. Ky. § 211, provides that no railroad corporation organized under the laws of another state, doing or proposing to do business in the state, shall exercise the right of eminent domain or acquire right of way or real estate until it shall incorporate under the laws of the state. Ky. St. 1903, § 841, provides that any such corporation "may, for the purpose of possessing, controlling, maintaining, or operating" a railway in the state, incorporate by filing its articles of incorporation as therein specified; section 763 provides the manner of organizing railroad corporations in the state; and section 765 provides that no railroad corporation of another state shall exercise the power of eminent domain, or acquire right of way, or purchase or hold land for railroad purposes, until it shall have become

organized as a corporation of the state in conformity with section 763. *Held*, that under said provisions, as construed by the highest court of the state, a foreign railroad corporation, which has merely complied with the provision of section 841 by filing its articles of incorporation, acquired thereby only the right therein given to "possess, control, maintain, and operate" a railroad in the state, and that it had no power to exercise the right of eminent domain, or to have the property of another subjected to its use by legal proceedings, unless it became a full Kentucky corporation, by organizing as such under section 763.

4. SAME—SUBJECTING TO USE PROPERTY OF ANOTHER COMPANY.

While a public service corporation, like a railroad company, is bound to render to the public certain services appropriate to its particular functions, it is not bound to permit its property to be subjected to use by a rival corporation, unless by express statutory enactment and by due process of law thereunder.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, §§ 111–113.]

In Equity. On demurrer to bill.
See 132 Fed. 402.

Du Relle & McHenry and Edwin C. Henning, for complainant.
Helm, Bruce & Helm, Reuben A. Miller, and Wilbur F. Browder, for defendant.

EVANS, District Judge. The complainant, by its bill, seeks the decree of the court that the defendant shall give the complainant the right to connect its tracks with those of the defendant at or near the Kentucky end, and also at or near the Indiana end, of defendant's bridge, and thereafter to permit complainant to equip the bridge for the operation of an electric railroad, and to run and operate its cars across the Ohio river on and over defendant's bridge. The bill further seeks the judgment of the court compelling the parties to make an adjustment between themselves of reasonable tolls for the servitude to which the bridge is to be subjected for complainant's benefit, or else for the court to adjust those tolls by its decree. The claim to these matters of relief is made by complainant upon several grounds, one of which is that under the law of Indiana, the benefits of which defendant has accepted, the bridge is a public highway, and is adapted to the complainant's uses. The defendant has demurred to the bill upon six grounds, the fifth of which was abandoned, and need not be further noticed.

Many important questions were raised in the very interesting argument at the hearing of the demurrer. One was as to whether the bridge was "adapted" to complainant's uses, within the meaning of that word as used in the Indiana statute. On its face the bill shows that, at least at present, the bridge is not in fact adapted to the uses of the complainant, which it is averred intends to impel its trains or cars by electricity as its motive power; but in the alternative it is claimed by complainant that it may, in certain contingencies, use steam for that purpose. While in the first aspect of the question the bill may affirmatively show that the bridge is not yet adapted to the uses of the complainant, still in the other aspect it does not, and on demurrer we feel inclined to take the view that this is a question of fact, rather than one of law merely, and therefore to be determined upon the evidence, and not on demurrer.

Beyond this, however, is the question, much discussed at the hearing, as to whether the Indiana law can have any controlling effect upon the propositions involved in the case. Neither by virtue of its enactment by the Indiana Legislature, nor by the lesser matter of its acceptance by the defendant, could Indiana law have any vigor south of the low-water line on the Indiana side of the Ohio river, which line is the boundary limit of the state of Indiana and of its jurisdiction. Even assuming that defendant's bridge is a public highway in Indiana, the laws of that state and the consent of defendant to accept the benefits thereof cannot give any vigor to those laws in Kentucky. The mere acceptance of their benefits by a Kentucky corporation, with the consent and under the authorization of this state, does not bring those laws across the Ohio river even on a bridge. This seems clear enough, and, if the court be correct in that conclusion, the provisions of the Indiana law, both as respects the uses to which the Indiana end of the bridge may be put and as to the duties of the defendant in Indiana, may be laid out of consideration, leaving us only to deal with the rights of the complainant and the duties of the defendant in this state, as they may be fixed by or as they may depend upon the laws of Kentucky alone. It may be inconvenient to have to bring two suits—one in Kentucky and one in Indiana—to obtain complete relief in a given instance; but that consideration cannot give this court any jurisdiction beyond the limits of this district nor within those of any other state. When a railroad extends through several states, it may, for example, be necessary, in enforcing a mortgage upon it, to have ancillary or other proceedings simultaneously going on in several states; but the inconvenience of such a course cannot usually affect its necessity, though comity and judicial courtesy may, by harmonious action, reduce the inconvenience to the minimum.

The demurrant contends that under the law of Kentucky the complainant has manifested no right to any part of the relief it seeks. Necessarily, if this be true, the demurrer must be sustained, but otherwise not. This brings us to the consideration of the constitutional and statutory provisions of Kentucky law applicable to the subject. Section 211 of the Constitution of Kentucky is as follows:

"Sec. 211. No railroad corporation organized under the laws of any other state, or of the United States, and doing business, or proposing to do business, in this state, shall be entitled to the benefit of the right of eminent domain or have power to acquire the right of way or real estate for depot or other uses, until it shall have become a body corporate pursuant to and in accordance with the laws of this commonwealth."

The statutory law governing railroad corporations is embraced in article 5 of chapter 32 of the Kentucky Statutes of 1903, covering sections 763 to 842, inclusive, of that volume. Sections 763, 765, and 841 are in full as follows:

"Sec. 763. Any number of persons, not less than seven, may associate to form a corporation for the purpose of constructing, operating and maintaining a railroad. Such persons shall execute articles of incorporation, which shall specify the name of the proposed railroad, the number of years the corporation is to continue, the amount of its capital stock, and the number of shares into which the same shall be divided; the number of directors, which shall not be less than five nor more than fifteen, and their names; the places from and to which, and the name of each county into or through which it is in-

tended to be constructed, and its length as near as may be. Each subscriber to such articles shall set opposite his name his place of residence and the number of shares subscribed by him. Whenever two hundred and fifty dollars per mile has in good faith been subscribed, and twenty per cent. thereof paid in in cash, to the persons named in the articles as directors, and an affidavit made to that effect by two of said named directors and attached thereto, a copy of said articles and affidavit shall be filed in the office of the Railroad Commissioners, and in the office of the Secretary of State; and when a certificate of such fact is delivered by the said officers to the incorporators, the persons who have subscribed such articles shall be a body corporate by the name specified in the articles, and as such may sue and be sued, contract and be contracted with, have a seal, and change the same at pleasure; may elect or appoint directors, who shall choose from their number such officers as may be necessary; may require from any officer or employé a bond for the faithful discharge of his duties, and prescribe such by-laws for its government, and exercise such powers as are necessary to the conduct of its business not inconsistent with law."

"Sec. 765. No railroad corporation, organized or created by or under the laws of any other state, shall have the right to condemn land for, or acquire the right of way for, or purchase or hold land for its depots, tracks, or other purposes, until it shall have first filed in the office of the Secretary of State of this state, in the manner provided in the first article of this chapter, its acceptance of the Constitution of this state, and shall have become organized as a corporation under the laws of this state, which it may do by filing in the office of the Secretary of State and the Railroad Commission articles of incorporation in the manner and form provided in section seven hundred and sixty-three of this article."

"Sec. 841. No company, association or corporation created by, or organized under, the laws or authority of any state or country other than this state, shall possess, control, maintain or operate any railway, or part thereof, in this state until, by incorporation under the laws of this state, the same shall have become a corporation, citizen and resident of this state. Any such company, association or corporation may, for the purpose of possessing, controlling, maintaining or operating a railway or part thereof in this state, become a corporation, citizen and resident of this state by being incorporated in the manner following, namely: By filing in the office of the Secretary of State, and in the office of the Railroad Commission, a copy of the charter or articles of incorporation of such company, association or corporation, authenticated by its seal and by the attestation of its president and secretary, and thereupon, and by virtue thereof, such company, association or corporation shall at once become and be a corporation, citizen and resident of this state. The Secretary of State shall issue to such corporation a certificate of such incorporation."

If the Kentucky Court of Appeals has given any construction to those sections, this court is bound to follow it, and will, of course, do so; for the rights of the complainant and of the defendant alike must in this case depend upon the laws of this state and their construction by its highest court. Only one opinion of that court construing those sections at all pertinent to this case has been called to my attention. That opinion was rendered on the 2d of the present month in the case of Cincinnati, New Orleans & Texas Pacific Railroad Co. v. Commonwealth of Kentucky, 83 S. W. 562; and it seems to me to be quite important at this point. It was there held that by proceedings under section 841 a corporation of another state would become "naturalized," and in that status only was a corporation in Kentucky, and consequently did not become liable to an organization tax. The court further held that only under section 763 did a railroad corporation become what may be styled, for convenient distinction, a "native" corporation. Possibly a similar result might follow if full compliance were made with section

765, because that would expressly involve, also, compliance with section 763. The construction thus given to these statutory provisions may have an important, and possibly a controlling, bearing upon the question now before us. It is nowhere claimed, in the bill of complaint or in the argument, that the complainant ever organized in Kentucky under or pursuant to the provisions of 763, or that it is now a native corporation. The utmost that is shown by the bill is that the complainant "naturalized" under section 841, and this brings us squarely to the point of ascertaining and determining whether what the Court of Appeals has designated as a "naturalized" corporation has, by the process of becoming such, acquired the right to have the relief insisted upon in the prayer of the complainant's bill. What may be called a "native" corporation under section 763 has given to it certain specified powers set forth in that section. What is called a "naturalized" corporation, under the construction given by the Court of Appeals to section 841, has, by that section, been expressly given the power of "possessing," "controlling," "maintaining," and "operating" a railway, or part thereof, in this state. These powers, and all that can fairly be implied from the language used, are given upon the express condition that copies of the articles of incorporation, authenticated in due form as prescribed, are filed in the office of the Secretary of State and in the office of the Railroad Commission. If a corporation organized in another state also organizes in Kentucky in accordance with the provisions of section 763, in addition to filing its articles of incorporation with the Secretary of State and the Railroad Commission, then under that combination of circumstances, under section 765, it has the power and right to condemn land, or acquire right of way, or purchase or hold land for its depots, tracks, and other purposes. But these powers, by the express language of section 765, are only given when the foreign corporation not only files a copy of its articles of incorporation, but also organizes under section 763; and, as we are powerless to eliminate that clause, it seems to us to be perfectly plain that there is no escape from the conclusion that compliance with it is essential before any rights are acquired, except those given by section 841.

As before observed, the complainant never organized as a native corporation under section 763. It has done no more than comply with the provisions of section 841, and it would seem inevitably to follow that it can claim none of the powers given by section 765, because that section, to say nothing of section 211 of the Constitution, expressly forbids the exercise of certain powers until the corporation has organized (under section 763) into what we have called a "native" corporation. By simply naturalizing under section 841, however, the complainant did acquire the rights and powers given by that section, which, as I have stated, include the power of possessing, controlling, maintaining, and operating a railway in this state. While in this mode and under this section complainant has doubtless acquired the rights last indicated, those powers do not seem to me to embrace, nor by any fair construction to include, any one of the items of relief prayed for in complainant's bill. Prima facie, at least, they would seem only to include the right to possess, control, maintain, and operate a railway, the title or right to

134 F.—62

which the complainant may in some form acquire by voluntary lease or purchase. It will be observed that section 211 of the state Constitution places certain prohibitions upon legislation. These prohibitions are not violated by section 841, which gives foreign or naturalized corporations certain powers upon certain conditions therein specified, and which complainant has complied with. Section 763 deals only with corporations organized in Kentucky, and it may be quite true, as argued by the learned counsel for the complainant, that section 765 was a later and amendatory enactment; but, even if that be true, it in no way conflicts with the two other sections we have named. It merely expands the previous law, and allows foreign corporations to have certain powers, which they otherwise could not acquire, but does this upon certain conditions, one of which is that they shall comply with the provisions of section 763, which is expressly named in section 765. We have no doubt that section 211 of the Constitution authorizes both section 841 and section 765, one of which gives certain rights upon one condition, and the other of which gives additional and further rights and powers upon other and superadded conditions. I do not doubt that it was perfectly competent under the state Constitution for the Legislature to make this difference.

It may be remarked in this connection that what is demanded by complainant by its bill is closely akin to the exercise of the right of eminent domain, namely, the right to have the property of another subjected to complainant's use; and I find in the Kentucky Constitution and statutes no power given to a corporation situated precisely as the complainant is situated to exercise that right, directly or indirectly. The right to use property belonging to one corporation acquired at its own expense cannot be obtained from an unwilling owner by another corporation, especially one that is foreign, otherwise than under express and positive law; and while a mere naturalized corporation has been given certain rights and powers by statute in Kentucky, no provision—certainly no express provision—has been made for granting to the complainant the rights it asks the court to enforce in this suit. And, while fully recognizing the well-known doctrine that public service corporations are bound to render to the public certain services appropriate to the particular functions of the corporation, that doctrine has not been supposed to reach far enough to make the corporation serve the purposes or be subjected to the uses of a mere rival in business. One water company or one telephone company or one telegraph company or one street railway company or one railroad company, while bound appropriately to serve the general public, cannot, unless under express statutory enactment and by due process of law thereunder, be compelled to give its property to the uses and benefits of a rival, except by some form of condemnation. The rival is not, ordinarily, to be included in the term "general public." See, especially in this connection, Elliott on Railroads, §§ 922, 974, 1084, and cases cited. In short, it seems to me that the entire relief prayed for is beyond the power of the court to give to this complainant in its present situation.

Section 216 of the state Constitution was also cited in the argument. That section provides:

"All railway, transfer, belt lines and railway bridge companies shall allow the tracks of each other to unite, intersect and cross at any point where such union, intersection and crossing is reasonable or feasible."

The provisions of that section we conceive would become important if the complainant had enforced or obtained a physical connection of its tracks with those of the defendant, or had enforced or obtained a crossing. If, under those circumstances, it had become necessary to prepare a decree, or to determine whether the complainant could go further, and pass over and along the defendant's bridge as part of its track, we could then construe section 216. But it seems to be too far ahead at present to demand further consideration.

It is also urged that complainant has no railroad track, nor a grade for one, prepared at any point, and it is contended that this is a moot suit, in which judgment is sought upon an abstract proposition. It is quite true that the bill shows that complainant has done nothing, except to survey, locate, and stake off its line from Evansville, Ind., to Henderson, Ky., including as a part thereof defendant's bridge, over and along the entire length of which and its approaches the complainant proposes to have its railroad; but it does not appear that by the time of final hearing, if this case should proceed that far, complainant's tracks might not be completed up to those of the defendant. Hence, on the demurrer, this question has not seemed to be very urgent or decisive, although the matter thus urged might be most important if this were a motion for an injunction pendente lite, or if we were now determining this action upon its merits at a final hearing, instead of passing upon a demurrer to the bill. Certainly, if at the final hearing it were made to appear that complainant still had no track laid, nor grade either completed or begun in good faith, it might be most important to consider whether complainant would be entitled to an injunction, which might then appear from those circumstances to be upon a speculative case, and relief which, in the sound discretion of the court, should be denied. But this phase of the case may well be postponed.

As it is in the actual case before us, it seems to me that the bill is without equity. The demurrer will therefore be sustained, and the bill dismissed, with costs, unless there is a desire to amend it.