(41 App. Div. 17.)

PEOPLE ex rel. ONEIDA TELEPHONE CO. v. CENTRAL NEW YORK TELEPHONE & TELEGRAPH CO. et al.

(Supreme Court, Appellate Division, Third Department.  May 9, 1899.)

1. TELEPHONE COMPANIES—DUTIES TO OTHER COMPANIES.
    Under Transportation Corporations Law, § 103 (Gen. Laws, c. 40; Laws 1890, c. 566), requiring every such corporation to receive dispatches from or for other telegraph or telephone lines, and, on payment of the usual charges, to transmit them with impartiality and good faith, and in the order received, and providing for a penalty for refusal to do so, one telephone company is not obliged to install an instrument in the offices of another company for the use of the latter's patrons.

2. MANDAMUS—WHEN LIES.
    Assuming that it is under such obligation, the statute prescribes the remedy, and mandamus will not lie to compel performance.
    Parker, P. J., and Merwin, J., dissenting.

Appeal from special term, Madison county.

Mandamus by the people, on the relation of the Oneida Telephone Company, against the Central New York Telephone & Telegraph Company and Arthur F. Bender.  There was a judgment for defendants, and relator appeals.  Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

J. T. Durham, for appellant.
W. S. Andrews, for respondents.

LANDON, J.  The defendants, by their demurrer, concede that it was the duty of the defendant company to furnish the relator with a telephone upon its demand, and tender of the proper payment; that it refused to perform that duty.  Counsel for the defendants concedes that the defendant company is liable to the relator either for

actual damages, or for the penalty of $100, under section 103 of the transportation corporations law (Gen. Laws, c. 40; Laws 1890, c. 566), and perhaps for both damages and penalty, but urges that mandamus will not lie, because the relator has an adequate remedy at law. Each company is a domestic corporation organized for and engaged in furnishing telephone service to the public at established rates of payment.    Practically, the relator desires to employ the defendant company and its appliances in its service, and the defendant company declines the employment, and refuses to render the service.    Section 103 of the transportation corporations law provides that:

"Every such corporation shall receive despatches from and for other telegraph or telephone lines or corporations, and from and for any individual, and on payment of the usual charges by individuals for transmitting despatches as established by the rules and regulations of such corporation, transmit the same with impartiality and good faith, and in the order in which they are received, and if it neglects or refuses so to do, it shall pay one hundred dollars for every such refusal or neglect to the person or persons sending or desiring to send any such despatch and entitled to have the same so transmitted."

Suppose, as the relator's petition will permit us to do, that the relator has 5 miles of wire in the village of Oneida, and none elsewhere, and that the defendant company not only has the like amount in the same village, but 5,000 miles of wire extending over the whole state; that the defendant company charges an individual $15 per quarter year for installing a telephone in his office, and allowing him to use it to send messages to any place where said defendant's lines extend.    The individual might send not more than one message a day.    If the relator can, for the same price, procure unlimited service for its patrons, it might daily send a thousand messages, and thus compel the said defendant to do the relator's work, not only for inadequate compensation, but also deprive it of the patrons upon which it depends.    The relator could thus make its profits at the said defendant's expense.    Does the statute contemplate this?    It does not, in terms, direct one company to install its telephone in its rival's office.    It must receive and transmit its rival's messages upon payment of the usual charges; but, if that means that it must also furnish its rival with an instrument in the latter's office, such meaning must be implied, because such is the usual course of business.    If the relator, a corporation just starting in business, has this right, it is clear that the damages for withholding it are not susceptible of adequate computation in advance, for it cannot be foretold what its damages will be; and if it is not permitted to enter upon such business successive suits after intervals of time would not be helpful, for its damages would remain conjectural.    Therefore it cannot be said that it has an adequate remedy at law; that is to say, if the statute has not limited its damages to the penalty.    At the common law one common carrier could not demand as of right that it be permitted to use its rival carrier's property for the benefit of its own business. Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628; Barney v. Steamboat Co., 67 N. Y. 301; People v. Hudson River Tel. Co., 19 Abb. N. C. 466.    When corporate, or even individual, property becomes, from its situation and use, employed as a monopoly of the public service, it can be regulated by statute so as to prevent extortion or excessive

charges (Munn v. Illinois, 94 U. S. 113); yet to compel service at unremunerative rates is equivalent to taking private property without just compensation, or taking it from one and giving it to another, and therefore not permissible. Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702; Railway Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484. It is not to be assumed that section 103 was intended to accomplish any such purpose, but, in view of the public franchise given to the corporations to engage in the telephone business, which, unless regulated by law, might become oppressive monopolies, the act was intended to secure to the public reasonable service under reasonable regulations, and at reasonable rates. It is foreign to the purpose of the act to permit another corporation, under pretense of using the line of its rival for purely private business, to use it to absorb the very business to which it was intended simply to permit it to contribute and profit upon the same footing as an individual.

Assuming that it is the duty of the defendant company to render the like service to the relator as to an individual, it is plain that the relator here seeks by mandamus to compel the defendant to render much more than the like service,—it seeks an inequality of advantage under pretense of equality. The difference is not merely in degree, but in substance and result. The case of relator is not within the spirit of the statute, and therefore not within the statute itself. No doubt the defendant company could have made regulations limiting the relator to its individual business, excluding that of its customers. Shepard v. Telegraph Co., 38 Hun, 338. But it does not appear to have done so, and whether it is practicable to do so we are not informed. It seems to be clear that the relator's application does not contemplate such regulations. But assuming that section 103 has changed the common-law rule as to rival companies, and imposed upon the defendant company the duty to install an instrument in the relator's office, it has also imposed the penalty for its violation. As, without the statute, neither the duty nor the remedy would exist, the remedy prescribed by the statute is exclusive. Stafford v. Ingersol, 3 Hill, 38; Lowry v. Inman, 46 N. Y. 119. Thus the relator has an adequate remedy at law for all the damages the law allows it. See In re Baldwinsville Telephone Co., 24 Misc. Rep. 221, 53 N. Y. Supp. 574. We think mandamus will not lie.

Interlocutory judgment affirmed, with costs. All concur, except PARKER, P. J., and MERWIN, J., dissenting.