LUNDQUIST et al. v. GRAND TRUNK WESTERN RY. CO. et al.

(Circuit Court, N. D. Illinois, N. D. July 18, 1901.)

No. 25,904.

**1. CARRIERS—DISCRIMINATION IN RATES—INTERSTATE COMMERCE ACT.**

A railroad company is not required by the interstate commerce act to give the same car-load rates on interstate shipments to forwarding agents who solicit property for shipment from different owners, each having less than a car load, and combine it into car-load lots, that it makes on car-load shipments by a single owner; the charges in such case not being for "a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions," so as to render the difference in the rates made an unlawful discrimination, under section 2 of the act (24 Stat. 379 [U. S. Comp. St. 1901, p. 3155]).

In Equity. On motion for preliminary injunction.

Christopher M. Mitchell and Thomas A. Moran, for complainants.

Shope, Mathis, Zane & Weber, for defendants Grand Trunk Western Ry. Co., Great Eastern Line, and William N. Ross.

George W. Wall, for defendants Delaware & L. & W. Ry. Co. and W. N. Ross.

KOHLSAAT, District Judge. This matter comes on for hearing upon complainants' motion for a preliminary injunction upon bill and affidavits. Complainants are known as forwarding agents or intercepting carriers. They solicit the shipment of less than car-load lots of merchandise between Chicago and New York, combine these shipments into car loads, and have for the profits of their business the difference between the car-load and less than car-load rates of defendant railroad companies between those points. The bill sets forth the rule adopted by defendants with reference to the handling of mixed car loads of freight, designated as rule 10, and the note thereto, which reads as follows:

"Note: The foregoing rule will apply only on freight from one shipper or owner, and will not cover L. C. L. shipments of property from two or more shippers combined into car loads by forwarding agents claiming to act as shippers. The term 'forwarding agents' shall be construed to mean agents of the carriers, and also agents of the actual shippers of the property, or any party interested in the combination of L. C. L. shipments of articles from several shippers into car loads at points of origin."

The bill alleges that defendants have proceeded to enforce the above provision of the note to rule 10 against complainants, that the said action of defendants amounts to an illegal discrimination against complainants in favor of car-load shipments by the owner of all the goods contained in said car load, that such unlawful discrimination will work an irreparable injury to complainants' business unless an immediate injunction be issued, and that said discrimination is illegal, because in contravention of the interstate commerce act.

Under the common law, the discrimination alleged herein was permitted to common carriers, inasmuch as the latter were not under any obligation to treat all shippers alike. The carrier was only required to make reasonable carrying charges to all. That, then, is the present law, except in so far as it may have been modified by the interstate

commerce act, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]. The provisions of said act bearing upon the question at issue herein are as follows:

"All charges made for any service rendered or to be rendered in the transportation of passengers or property as aforesaid, or in connection therewith, or for the receiving, delivering, storage, or handling of such property, shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful.

"Sec. 2. That if any common carrier subject to the provisions of this act shall directly or indirectly, by any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful." 24 Stat. 379 [U. S. Comp. St. 1901, p. 3155.]

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155.]

The provision of the act which bears directly upon the particular case now before me is fairly comprehended within the clause of section 2 which prohibits discrimination in charges for doing "a like and contemporaneous service in the transportation of a like kind of traffic under substantally similar circumstances and conditions." Have defendants so discriminated against complainants? Is the service demanded by complainants a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions to those presented by the case of a single owner of freight offered for car-load shipment? The margin between the freight charged on a car-load shipment and that charged upon the same goods shipped in less than car-load lots is so considerable that the forwarding agent is enabled to offer to shippers controlling inducements to permit their goods to be shipped through the agency of such forwarding agents, and at the same time leave the latter a substantial balance as profits. Thus the railroad company is made to transport freight which would in ordinary course come to it at the less than car-load rates for a rate appreciably less than that paid by the actual owners to the forwarding agent, and the difference is absorbed by the latter. This condition of affairs, defendants claim, is unjust to them, and urge, among others, the following reasons: (1) That they are thereby placed in a position where they are liable to be imposed upon as to classification and rates; (2) that they are deprived of their less than car-load business to such an extent that it will eventually be entirely eliminated; (3) that they are thus compelled to enable the forwarding agent or intercepting carrier to do what they are by the interstate commerce act expressly forbidden to do (i. e., discriminate between shippers); (4) that they are exposed to the expense and annoyance of a multiplicity of suits by the various beneficial owners, without the

additional compensation provided for in their less than car-load rates.

I do not think the first point well taken. There can be no more difficulty in avoiding imposition where the shipper is a forwarding agent transporting in his name the goods of numerous owners, than where the shipper is the actual owner of the goods. As business is now conducted, a single owner may handle almost every variety of freight.

The second objection is entitled to consideration if the less than car-load rates as constituted are just and reasonable. There is nothing in this record establishing the contrary. For the purposes of this hearing, their reasonableness must be assumed. It would be a novel proposition to hold that defendants are required to furnish facilities for undermining their own business. It may well be that, if railroads were to handle nothing but car-load lots, they would find it necessary to materially change their rates. There is in this objection a strong appeal to one's sense of justice, but I do not deem it necessary to dispose of the case upon this ground.

The third objection is also entitled to consideration. The difference between the car-load and less than car-load rates placed at the disposal of the forwarding agent may easily be so manipulated by him as to defeat the spirit of the interstate commerce act. He is not subject to the provisions of that act. Manifestly, he may evade the very provisions of the act which he is claiming the defendants are defeating in this case. He can offer different rates to different shippers, with no other limit than business necessity. Not only this, but he can give his principals lower rates than those given by defendants to their less than car-load shippers. The logical outcome of such a condition would be, according to the inexorable rules of commerce, that defendants would be obliged either to do an injustice to their shippers of less than car-load lots, or reduce all their rates to a car-load basis. It seems to me that the two last-named objections go far toward the demonstration of the equity of defendants' position.

Coming now to the fourth objection, the plain proposition is this: Is the service demanded by complainants, all the circumstances and conditions considered, a like and contemporaneous service in the transportation of a like kind of traffic under similar circumstances and conditions to those offered by defendants to an owner of goods, as distinguished from a forwarding agent representing several owners? It must be admitted that the carrier is, in the case of numerous beneficial owners, subjected to an additional liability, which it is entitled to provide against by an increased rate. There is some uncertainty as to whether or not the carrier could, in cases like the one before the court, be held liable to the beneficial owner upon the contract of the forwarding agent, but there is no doubt but that it can be pursued in tort. It is, of course, impossible to determine the actual extent of the liability thus assumed; but it is appreciable, and quite sufficient, in my judgment, when taken with the foregoing, to differentiate it from the car-load service furnished to owners, as distinguished from forwarding agents representing different owners, and therefore the case at bar does not come within the terms of the interstate commerce act relied upon by complainants. In England this increased liability has been ignored in suits brought under the railway causes act. That act is much more

explicit in its terms than the interstate commerce act. The peculiar language of the former is that "all tolls shall be charged equal to all persons and after the same rate." But even were this not the case, it is not probable that our courts would feel bound to follow the English decisions. The conditions surrounding the operation and managements of railroads covering such a small territory as that of England are so different from those existing in this country, and the demands upon the carrier service are so divergent, that English decisions should not be allowed to control. The trend of the American decisions and the official utterances of the Interstate Commerce Commission all recognize the principle that the particular facts of each case must have great weight in the application of the provisions of the interstate commerce act.

Upon this view of the case, the complainants are compelled to justify their bill under the law as it stood before the passage of the interstate commerce act. This, as before stated, cannot be done, in view of the federal decisions—notably that in the Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791.

This is a pioneer case upon the issue raised by complainants, and little aid can be obtained from authoritative sources; but, upon the whole case, considering all the conditions, I am clearly of the opinion that complainants' contention cannot be sustained, and that a preliminary injunction herein should be denied. In view of this conclusion, it becomes unnecessary to pass upon the other questions raised.

---

### THE J. C. AMES.

(District Court, E. D. Wisconsin. March 26, 1903.)

1. COLLISION—STEAMER AND SAILING VESSEL—FAILURE TO MAINTAIN LOOKOUT.

As a steamer, with a tow, was approaching the east draw of a bridge from the north, in the nighttime, she saw both lights of the schooner Wyman heading for the same draw from the south, each vessel being about half a mile distant from the bridge. The steamer gave a signal of one blast, and headed for the west draw, but on coming nearer saw the lights of another steamer, which was approaching from the south, headed for that draw. Supposing it to be the Wyman, and that she had changed her course, the steamer gave a two-blast signal, and changed her course for the east draw, where she came in collision with the Wyman. No lookout was stationed on the steamer, but that duty rested on the officer serving as navigator. Held, in the absence of evidence showing contributory fault on the part of the Wyman, that the steamer was in fault for the collision, the facts being insufficient to exonerate her on the ground of inevitable accident.

2. SAME—CONTRIBUTORY FAULT—FAILURE OF SCHOONER TO SHOW TORCH.

The failure of a schooner navigating on the Great Lakes to show a torch to a steamer approaching in the nighttime, as required by rule 12 of the navigation rules (28 Stat. 645 [U. S. Comp. St. 1901, p. 2889]), is not a fault contributing to a collision with the steamer, where she was seen by the steamer and signaled when a mile distant, and thereafter kept her course, and the omission did not in any way tend to mislead or confuse the steamer.

In Admiralty. On libel filed by the owners of the schooner Charles E. Wyman for damages by collision.

¶ 2. Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.