The Postal Telegraph Company and the Western Union Company are competitors in the business of transmitting messages by telegraph throughout the *Page 97 
United States and have been such for many years. Each company maintains offices and has wires in various of the cities and villages of the state. The Western Union Telegraph Company has a greater number of such offices and reaches more places than the Postal Telegraph Company and the Postal Telegraph Company is in communication with some villages and cities which the Western Union Telegraph Company does not reach.
It appears that, for thirty years, it has been the custom of both companies to carry on business with their customers both for cash and on credit. One of the arrangements has been to charge for telegrams transmitted at the end of each month and a large percentage of the business of both companies is done upon credit. This practice seems to be a decided advantage, as those who send many telegrams dislike paying comparatively small sums with each message when delivered to the company for transmission.
The Western Union Telegraph Company permits any subscriber of the telephone companies to telephone telegrams over the telephone and charge such telegrams to their accounts with the telephone company. The telephone company collects for the telegraph company as its agent. For thirty years the Western Union Company has extended to the Postal Telegraph Company the privilege of a charge account for all telegrams which the Postal Telegraph Company received from its customers for places it did not reach by its wires and this practice was maintained until August 1, 1919.
The Postal Company at times accepts telegrams from its customers which it is either partly or wholly unable to transmit over its own wires and such telegrams may be entirely transmitted over the wires of the Western Union Company. Such telegrams have been delivered to the Western Union Company's offices either just as they have been received or else a copy of same. Where the telegram *Page 98 
can be transmitted over the Postal Company's wires for a portion of its distance, it has been the practice in some cases to transmit the telegram, as far as it can be sent, over the Postal wires and from that point to transmit it to its destination over the Western Union wires. The practice formerly obtaining with reference to paying for these messages has varied. Where the Postal Company received cash from the customer, they claim that they have immediately paid such cash to the Western Union Company; where their customer had a charge account and such customer also had a charge account with the Western Union Company, the Postal Company did not pay nor was the cost of such message charged against the Postal, but was charged directly to the mutual customer of both companies by the Western Union. Where the sender was a customer of the Postal and not of the Western Union Company, the cost of such telegram was charged to the Postal Company, the bill being sent at the end of the current month and the Postal Company has always paid therefor.
When the telegraph companies were taken over by the federal government during the war, this practice was continued by the officials in charge for the government. Upon the return of the telegraph system to the companies after the war, both companies were authorized to continue to charge the increased rates in force under government control during the war. The Western Union Company continued to charge the authorized increased rates, but the Postal Company decreased its rates about twenty per cent and then the Western Union Company discontinued the practice of permitting the Postal Company to send its telegrams for places which the Postal could not reach upon the basis of credit and would only accept such telegrams when accompanied by cash payment for them. Their former practice was not changed as to any of their other clients, nor as to other corporations owning telegraph lines, including the Marconi and the *Page 99 
cable companies. The Postal Company claims that at times the refusal to charge their telegrams works a great hardship upon them and discriminates against them and their customers to the injury of the public and those sending messages. It was at first intimated that one of the reasons for the refusal of the Western Union Company to extend credit to its rival was that it was not certain of its financial condition, but this was finally disclaimed. It was finally conceded that the Postal Company is financially amply responsible for any credit extended to it and has promptly paid all charges made against it theretofore. Upon the argument of the appeal, counsel for the respondent said that the only reason for the refusal of credit was because the Postal Company was a competitor.
The record discloses that the Postal Company receives at times large numbers of messages late at night, which are to be transmitted as night messages or night letters; that some of these messages cannot be entirely transmitted over the Postal wires and must be in part or wholly transmitted over the Western Union wires. It is important to the sender that all the messages should be delivered at about the same time the following day and that at the offices of the Postal Company at which the messages were received for transmission, they have not the necessary sum in money to pay the Western Union Company upon delivery to them the charge for transmission. The Postal Company contends that the transaction is not one by which it profits. On the contrary, it claims, without dispute, that it loses between three and six cents on each message which it cannot transmit over its line by reason of the cost of messenger service, but that this is done in order to benefit the public and, incidentally, the public do benefit by the practice, because of the convenience. The Postal Company says it is willing to reach the places it does not now reach, many of them small cities and towns, but cannot do so because of the *Page 100 
contracts which the Western Union Company has with the railroads which materially reduces the cost of offices which they maintain at these places.
It is well settled that all who deal with a public service corporation are to be treated alike and favor cannot be extended to one which is not offered to another; nor can a privilege given to one be refused to another.
Section 103 of the Transportation Corporations Law (Cons. Laws, ch. 63), relating to telegraph and telephone corporations, provides: "Every such corporation shall receive dispatches from and for other telegraph or telephone lines or corporations and * * * transmit the same with impartiality and good faith and in the order in which they are received."
Section 91, subdivision 3, of the Public Service Commissions Law (Cons. Laws, ch. 48) provides: "No telegraph corporation or telephone corporation shall make or give any undue or unreasonable preference or advantage to any person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."
The answer made by the respondent is that the Postal Company is not its customer, but its competitor and thus stands in a different position, and further that by accepting their telegrams they are helping the Postal to deceive the public. This is aside from the real issue.
The main consideration is where lies the benefit to the public and not that of assisting either of these corporations in their rivalries. They both possess valuable charters from the state. Each is entitled to profit upon their undertakings upon condition that they render service to the public. The public is not much concerned with the rivalries of these two companies.
The question narrows down to this: Is one less a customer of the Western Union Company because it is a competitor and is not a competitor presenting himself as *Page 101 
a customer a part of the general public and entitled to the same privileges and rights as any other customer because incidentally he happens to be a competitor? I can see no difference in principle. The statute above quoted specifically compels each telegraph company to receive dispatches from and for other telegraph lines or corporations, thus recognizing that competitors have the absolute right to use the wires of one another as customers. "Such messages shall be transmitted with impartiality and good faith." Is it receiving and transmitting a message with impartiality to accept the business of one customer upon certain terms and refuse such terms to another?
Between these two corporations each represents the public when applying to the other for service and no discrimination can be made by either against the other, but each must render to the other the same services it renders to the rest of the community under the same conditions. (People ex rel. Western Union Tel.Co. v. P.S. Comm., 211 N.Y. 542; 160 App. Div. 144.)
Impartiality requires impartiality of credit as well as impartiality in service. It requires that a public service corporation which makes a practice of extending credit to one customer shall not arbitrarily and with preferential purpose refuse to extend like credit to other customers of like standing. No doubt the relator has a broad discretion in determining in any case whether the requisite standing has been attained, and a determination adverse to the customer, if made in good faith, ought seldom to be disturbed. We are not embarrassed by such difficulties in this case, for here the relator admits that the standing of the customer is unquestioned. In such circumstances, the refusal of credit is arbitrary discrimination, and the outcome a violation of the statutory mandate of equality. (Louisville Nashville R.R. Co. v. U.S., 238 U.S. 1; U.S. v. Hocking Valley R. Co., 194 Fed. Rep. 234; 210 Fed. Rep. 735.) *Page 102 
The order made by the public service commission is apparently too broad. It should not have required the Western Union Company to continue the practice which it had established with the Postal Company, but should, in the terms of the statute, require the Western Union Company to receive dispatches from the Postal Company and transmit the same upon the same terms and substantially the same way as it does from any other customer, irrespective of its being a competitor.
The order of the Appellate Division appealed from should be reversed, and the order of the public service commission as thus modified should be affirmed, with costs in this court and in the Appellate Division.
HISCOCK, Ch. J., CHASE, HOGAN, CARDOZO and CRANE, JJ., concur; HISCOCK, Ch. J., and CRANE, J., vote to further modify the order of the public service commission by restricting in various respects the right of appellant to compel relator to receive and transmit its messages on credit; POUND, J., takes no part.
Ordered accordingly.