**NORTH CAROLINA PUBLIC SERVICE CO. et al. v. SOUTHERN POWER CO.[a]**

(Circuit Court of Appeals, Fourth Circuit.   May 10, 1922.)

No. 1927.

1. **Courts ⬤⟼265—Federal District Court has no original jurisdiction in mandamus.**

   A District Court of the United States has no original jurisdiction in mandamus.

2. **Removal of causes ⬤⟼11—Mandamus proceeding not removable to federal District Court.**

   A mandamus proceeding is not removable to the District Court; the District Court having no original jurisdiction in mandamus proceedings.

3. **Mandamus ⬤⟼3(9)—Where power company threatened to, but had not, cut off current, injunction, and not mandamus, proper remedy.**

   Complaint alleging that plaintiff owned and operated a street railway system and an electric light and power system, and that defendant power company had notified plaintiff that it would cut off its current at the termination of a contract between plaintiff and defendant, but not alleging that the current had been cut off, *held* to state a case for which injunction, and not mandamus, was the proper remedy.

---

⬤⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[a]Certiorari granted 258 U. S. —, 43 Sup. Ct. 94, 67 L. Ed. —.

**4. Injunction ⊕1—Mandamus ⊕1—"Mandamus" distinguished from "injunction."**

The office of mandamus is to compel the performance of a plain and positive duty only after actual default, and not in anticipation of an omission of duty; the remedy for threatened violation of a duty, entailing an injury for which the law gives no adequate compensation, being an injunction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Injunction; Mandamus.]

**5. Removal of causes ⊕4—Citizen of another state entitled to removal of cause brought in state court to United States District Court.**

Where complaint in action in state court stated a cause of action for an injunction, the defendant, a citizen of another state, was entitled to have the case removed to the United States District Court.

**6. Removal of causes ⊕97—Federal court not bound by holding of state court on question of removability after filing of record in federal court.**

On filing of record in federal court on removal of cause from state court, the federal court acquired jurisdiction of the question of removability, and was not bound by state court's subsequent holding that the cause was not removable.

**7. Corporations ⊕382½, New, vol. 16 Key-No. Series—Corporation which has undertaken a particular service authorized by charter conferring right of eminent domain must serve all alike.**

When a corporation has definitely undertaken and entered on a particular service authorized by the charter, which confers the right of eminent domain, the obligation to perform the service is complete, its rates and terms are subject to regulation by public authority, and it must serve all alike.

**8. Electricity ⊕11—Electric power company held without right to pick own customers and arbitrarily discriminate among them.**

Electric power company, which had developed the water power of the state and for such purpose had been given and had used the power of eminent domain, and which had undertaken to transmit electric current to independent vendors thereof under the authority of its charter, did not have the right to pick and choose its customers, and to arbitrarily discriminate among them, but was required to treat all alike; such corporation constituting a public service corporation.

Waddill, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd, Judge.

Action by the North Carolina Public Service Company and others against the Southern Power Company. Judgment for defendant, and plaintiffs appeal. Modified.

John W. Davis, of New York City, and Aubrey L. Brooks, of Greensboro, N. C. (King, Sapp & King and C. A. Hines, all of Greensboro, N. C., and Dred Peacock, of High Point, N. C., on the brief), for appellants.

W. S. O'B. Robinson, Jr., of Charlotte, N. C., and William P. Bynum, of Greensboro, N. C. (E. T. Cansler, of Charlotte, N. C., on the brief), for appellee.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WOODS, Circuit Judge. This action was commenced in the superior court of Guilford county, N. C., on September 3, 1920. The

complaint alleged ownership and operation by the plaintiff North Carolina Public Service Company of a street railway system and of an electric light and power system, furnishing light for the streets and private houses and operating the machinery of industrial enterprises in the cities of Greensboro and High Point, N. C., under municipal franchises; the ownership and operation by the defendant, Southern Power Company, a New Jersey corporation, of large hydroelectric plants on the streams of the state of North Carolina, and also steam plants, generating in the aggregate about 300,000 electric horse power, which it sells as a public service corporation to factories, municipalities, and to other public corporations for resale; contracts by defendant with plaintiff North Carolina Public Service Company, in December, 1909, and January, 1910, to furnish current necessary for its needs at Greensboro and High Point for the term of 10 years; the refusal by the defendant to enter into a new contract to furnish North Carolina Public Service Company the electric current necessary for its plants, except for a much shorter period and at a rate much in excess of the former charge, and in excess of the rates charged for like services rendered to other purchasers under the same or substantially similar conditions; notice by defendant that it would cut off its current at Greensboro and High Point; the inability of the North Carolina Public Service Company and the cities of Greensboro and High Point to obtain current from any other source, and irreparable loss that would result to North Carolina Public Service Company and to the cities and their citizens from being deprived of light and power; the readiness of the North Carolina Public Service Company to pay any reasonable price for the current required, furnished without discrimination as to rates and service. The relief asked was mandamus to compel the Southern Power Company "to continue to furnish electric current and power to the Public Service Company, through its substations at Greensboro and High Point, to operate the street car lines in both said cities, and for the use and benefit of the municipalities and the citizens thereof for light and power, as is now being furnished."

On September 8, 1920, defendant filed a petition for removal to the United States District Court of the Western District of North Carolina, and on September 15, 1920, filed a transcript of the record in the federal court. The motion to remove was refused by the state court on the ground that under the allegations of the complaint "a writ of mandamus may properly issue," and therefore the United States District Court was without jurisdiction. On appeal the state Supreme Court affirmed the judgment, two of the justices dissenting. 180 N. C. 335, 104 S. E. 872. On October 23, 1920, defendant answered in the federal court. On December 13, 1920, the state court on the pleadings granted a judgment of mandamus as prayed for, requiring the Southern Power Company to furnish the necessary current and providing:

"The rates and terms of payment for said electric current shall be such as now exist between plaintiff North Carolina Public Service Company and defendant, or as same may hereafter be fixed and determined by the North Carolina Corporation Commission."

Pending appeal from this judgment to the state Supreme Court, plaintiffs moved in the United States District Court to remand the cause to the state court. The motion was refused, and subsequently the District Judge by order enjoined further proceedings in the state court. At the trial the federal court, after refusing plaintiffs' motion for judgment on the pleadings, heard testimony and decreed that the plaintiffs had no right to require the Southern Power Company to furnish current to the North Carolina Public Service Company for resale to the cities of Greensboro and High Point or to its other customers; that the North Carolina Public Service Company did have the right to require such service for its motive power in operating its street railway system in Greensboro and High Point; that to prevent the great loss and inconvenience which would result from the sudden stoppage of the service Southern Power Company should continue to furnish the current as theretofore for the period of six months upon terms specified in the decree.

[1-5] Error is assigned in refusing to remand the cause and in enjoining further proceedings in the state court. The District Court of the United States has no original jurisdiction in mandamus, and therefore a mandamus proceeding is not removable. Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633, 30 L. Ed. 743. In our opinion, however, the complaint stated a case for which injunction, not mandamus, was the proper remedy. The office of mandamus is to compel the performance of a plain and positive duty. It is never granted in anticipation of an omission of duty, but only after actual default. Injunction is the proper remedy for threatened violation of a duty, entailing an injury for which the law gives no adequate compensation. Board of Liquidation v. McComb, 92 U. S. 531, 23 L. Ed. 623; Ex parte Cutting, 94 U. S. 14, 24 L. Ed. 49. The numerous authorities distinguishing the two remedies are set out in the opinions in North Carolina Public Service Co. v. Southern Power Co., 180 N. C. 335, 104 S. E. 872. The complaint alleges that defendant had notified North Carolina Public Service Company that it would cut off its current at the termination of the contract, not that defendant had already done so. It seems to us, therefore, that the suit was actually for injunction against threatened injury. Being a suit of a civil nature in equity, no state practice or statute or adjudication could deprive a citizen of another state of his right to have it tried by the courts of the United States. Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407; Mississippi Mills v. Cohn, 150 U. S. 202, 14 Sup. Ct. 75, 37 L. Ed. 1052; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; Harrison v. St. Louis & San Francisco R. Co., 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, L. R. A. 1915F, 1187; C. & O. Ry. Co. v. McCabe, 213 U. S. 207, 217, 29 Sup. Ct. 430, 53 L. Ed. 765; Colleton M. & M. Co. v. Savannah River Lumber Co. (C. C. A. 4th Circuit) 280 Fed. 358.

[6] Upon the filing of the record in the federal court on September 15, 1920, that court acquired jurisdiction of the question of removability, and with it the power to protect its jurisdiction by injunction. Any action thereafter taken by the state court was subject to

the exercise by the federal court of its jurisdiction to decide the question of removability. C. & O. Ry. Co. v. McCabe, 213 U. S. 217, 29 Sup. Ct. 430, 53 L. Ed. 765. It follows that the decree of the Supreme Court of North Carolina on November 10, 1920, holding the cause not removable, was not res judicata between the parties, and was in no way binding on the District Court. The District Court was therefore right in refusing to remand the cause, and in enjoining further proceedings in the state court.

On the merits the question is whether under the pleadings and proof the Southern Power Company, as a public service corporation, owes the duty to the North Carolina Public Service Company to furnish electric current on any terms for street lights, the lights in private dwellings, and power for the manufacturing plants which the North Carolina Public Service Company has contracted with the cities of Greensboro and High Point and manufacturing plants to furnish. The Southern Power Company by its charter is authorized, among other things:

"To buy, sell, operate or lease pole lines, erect poles, string wires thereon, or on poles of other individuals or corporations, * * * and to use the same, either for the transmission of electric current for delivery to consumers on such lines or *for transmission of current to independent vendors thereof,* and to sell or lease to other individuals or corporations the right to string wires on or attach electric wires to any or all poles so erected, owned, or leased, and to use such lines, both as through lines and for local delivery."

In its answer the defendant admits that it has, in a few instances, entered into special contracts with other public service companies to sell them limited quantities of electricity at the prices and for the periods and upon the terms and conditions stated in such special contracts; that in August, 1908, it entered into a contract with the Salisbury & Spencer Railway Company, and that about 1914 it entered into a contract with the Southern Public Utilities Company for the sale of electricity to it, which electricity said Public Utilities Company is reselling for domestic light and power purposes. But it denies that it has in any way dedicated its property or business to the use or purpose of selling electricity to other public service corporations for resale and distribution.

By the law of North Carolina hydroelectric companies are declared to be public service corporations, subject to the laws of the state regulating public service corporations, and under the control of the Corporation Commission of the state. Consolidated Stat. § 1035. Section 1054 provides:

"The Corporation Commission shall make reasonable and just rules and regulations—1. to prevent discrimination in the transportation of freight or passengers, or in furnishing electricity, electric light, current, power or gas."

The right of eminent domain is conferred by statute on electric power and light companies. Both sides rely on the decisions of the North Carolina Supreme Court in Salisbury & Spencer Ry. Co. v. Southern Power Co., 179 N. C. 18, 101 S. E. 593, 12 A. L. R. 304; 179 N. C. 330, 102 S. E. 625, 12 A. L. R. 304; 180 N. C. 422, 105 S. E. 28; and in Public Service Co. v. Power Co., 179 N. C. 330, 102 S. E. 625, 12 A. L. R. 304; Id., 181 N. C. 356, 107 S. E. 226. Inas-

much as these cases were decided on demurrer or motion, without a hearing on the testimony, and therefore do not present precisely the facts before us, the decisions are not binding authorities.

The Southern Power Company has exercised under state authority the power of eminent domain, and has constructed about 1,500 miles of transmission lines, and has developed about 60,000 horse power of hydroelectric current. Its lines are connected with the Georgia Railway & Power Company, which is in turn connected with other large producers of hydroelectric power, and from this source Southern Power Company get over 11,000,000 kilowatts a year. The Southern Power Company and these connected companies own and control all the hydroelectric power now, developed and available to the region of the country in which the cities of Greensboro and High Point are situated. It is true that the water power of the state of North Carolina is estimated to be capable of producing electric power of 1,095,000 horse power. Consideration is to be given to future possibilities, including the possibility of the plaintiffs acquiring and developing water power for their own use. But an important factor in that consideration is the deterring fear which others must have of being unable to compete in a field so largely pre-empted by the Southern Power Company, a corporation rich in resources and experience. If others hereafter enter the field with the great resources adequate to compete in the production and sale of hydroelectric power, it may be that the courts would then deal with such questions as are now before us, with the element of exclusive control eliminated. We are now dealing with the present condition, and that condition is that the Southern Power Company and the companies with which it connects have control of the generation and sale of hydroelectric power which is available to the North Carolina Public Service Company and the cities of Greensboro 'and High Point, and other independent vendors and cities and towns in like situation, except in so far as it is subject to regulation by the North Carolina Public Service Commission.

The great advantage in economy and convenience of hydroelectric power over power generated by steam, the failing competition of steam power and the general substitution of hydroelectric power for it appear from the record. The right of eminent domain could not have been conferred on the defendant, except in consideration of the service to the public expected of it in the exercise of the charter powers granted. This power of eminent domain cannot be separated from the duties assumed by the corporation. Exercising this right to carry its lines and power anywhere in the state by condemnation, the defendant has carried them to cities and towns, and has there made contracts with other public service corporations under its charter power to use its property for "transmission of current to independent vendors thereof." Among these independent vendors furnished with current is the Southern Public Utilities Company. This company is nothing more than an offshoot of the Southern Power Company, controlled by it and with the same stockholders. It has made contracts with the Southern Public Utilities Company to furnish it current at a rate materially lower than that demanded of the North Carolina Public Service Company.

In this skeleton statement we have intentionally omitted all subordinate and incidental facts peculiar to this case—such as the dismantling of one of the steam plants of the North Carolina Public Service Company in reliance on defendant's current, and the negotiations between the parties—because it seems vital to the interest of the parties and the public that we should directly meet the propositions laid down by the Southern Power Company, namely: That, under the facts stated, it owes no public service "of transmission of current to independent vendors thereof"; that as to such service it is not subject to rules and regulations of the state Corporation Commission; that it may furnish one or many of these independent vendors to cities and towns to the exclusion of others; that it may refuse to furnish current on any terms to cities and towns themselves to be resold to their inhabitants; that it has absolute freedom of contract to discriminate in price and terms between all independent vendors, including cities and towns; that it has the right to create its own subordinate "independent vendor," Southern Public Utilities Company, and refuse to deal with any other on equal terms or on any terms.

Defendant's claim, thus stated in its nakedness, is based on the assertion of fact that the North Carolina Public Service Company and other independent vendors are competitors in business of the Southern Power Company, and on the legal contention that as such competitors they are not entitled to claim service as parts of the public—that in respect to independent vendors of current the North Carolina Corporation Commission has no power to regulate rates. If the Southern Power Company and the North Carolina Public Service Company are competitors at all, they are so in a restricted sense. It is true the Southern Power Company has been serving some towns and their inhabitants and factories in the same way that the North Carolina Public Service Company serves Greensboro and High Point and their inhabitants and factories. But it appears from the testimony of Mr. Lee, vice president of Southern Power Company, that in these instances it has turned over its property and contracts to Southern Public Utilities Company, which company purchases current from the parent company. It is true it bid in its own name for the contract to furnish current to the cities of Greensboro and High Point, but it seems fair to infer that in pursuance of its general policy these contracts would have been turned over to Southern Public Utilities Company. At all events, we think the evidence admits of no other inference than that the policy and aim of the Southern Power Company is to furnish current directly to municipalities only through its own "independent vendor," Southern Public Utilities Company.

This leaves Southern Power Company exercising its corporate powers mainly, if not entirely, for the wholesale manufacture and sale of hydroelectric current. It is true that North Carolina Public Service Company does furnish current to contiguous factories, and in this restricted sense it may be a competitor of Southern Power Company; but it is not a competitor in the general manufacture, sale, and distribution of current. In the business of furnishing light and power to cities and towns and their inhabitants, the real competition of North Carolina Public Service Company and other independent vendors is not with Southern

Power Company, exercising its corporate powers, but with Southern Public Utilities Company, exercising its separate corporate powers; and the ultimate issue is whether Southern Power Company shall be allowed to destroy the really independent public service corporations, and thus smother competition, to the great detriment of the public, by discrimination in favor of one of the competitors.

[7] There is high authority for the general proposition of law that one competitor in business cannot demand service of another in promotion of its business.[1] But, when a corporation has definitely undertaken and entered upon a particular service authorized by a charter which confers the right of eminent domain, the obligation to perform the service is complete, its rates and terms are subject to regulation by public authority, and it must serve all alike. In such public service it cannot pick and choose its customers. The principle is applied under varying conditions by the authorities cited in the margin.[2]

[8] In this instance the Southern Power Company has definitely undertaken, entered upon, and continued the service of transmitting electric current to independent vendors thereof under the authority of its charter, and for that purpose has exercised the power of eminent domain conferred by the state. It cannot now be heard to say that it owes no public duty with respect to that service, and that it may pick and choose its customers, and arbitrarily discriminate among them.

The Supreme Court cases relied on by the defendant are not controlling. In The Express Co. Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791, the basis of the decision is that the railway companies never held themselves out as public service corporations in the sense of furnishing accommodation to other carriers who might wish to do an independent business on their lines. The court pointed out that such general service to all express companies applying for it is rendered im-

---

[1] Evansville & H. Traction Co. v. Henderson Bridge Co. (C. C.) 134 Fed. 973; Pacific Telephone & Telegraph Co. v. Anderson, 196 Fed. 703; Home Telephone Co. v. Sarcoxie Light & Telephone Co., 236 Mo. 114, 139 S. W. 108, 36 L. R. A. (N. S.) 124; Lundquist v. Grand Trunk W. R. Co. (C. C.) 121 Fed. 915; Jacobson v. Wisconsin R. Co., 71 Minn. 519, 74 N. W. 893, 40 L. R. A. 389, 70 Am. St. Rep. 358; Central Stockyards Co. v. Louisville & Nashville R. Co., 192 U. S. 568, 24 Sup. Ct. 339, 48 L. Ed. 565.

[2] N. Y. & Queens Gas Co. v. McCall, 245 U. S. 345, 38 Sup. Ct. 122, 62 L. Ed. 337; Lumbard v. Stearns, 4 Cush. (Mass.) 60; Munn v. Illinois, 94 U. S. 113, 126, 24 L. Ed. 77; Mason v. Consumers' Power Co., 119 Minn. 225, 137 N. W. 1104, 41 L. R. A. (N. S.) 1181, Ann. Cas. 1914B, 19; Haugen v. Albina Light & Water Co., 21 Or. 411, 28 Pac. 244, 14 L. R. A. 424; New Orleans Gas Co. v. La. Light Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Western Union Tel. Co. v. Public Service Commission, 230 N. Y. 95, 129 N. E. 220; U. S. Telephone Co. v. Central Union Telephone Co. (C. C.) 171 Fed. 130, 144; U. S. Tel. Co. v. Central Union Tel. Co., 202 Fed. 66, 122 C. C. A. 86; Clarksburg Light & Heat Co. v. Public Service Commission, 84 W. Va. 638, 100 S. E. 551, 554; Postal Cable Telegraph Co. v. Cumberland Tel. & Tel. (C. C.) 177 Fed. 726; Pinney v. Los Angeles Co., 168 Cal. 12, 141 Pac. 620, L. R. A. 1915C, 282, Ann. Cas. 1915D, 471; German Alliance Ins. Co. v. Kansas, 233 U. S. 389, 404, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; Morawetz on Private Corporations, § 1129; People ex rel. Western Union Tel. Co. v. Public Service Commission, 230 N. Y. 95, 129 N. E. 220, 12 A. L. R. 960; State v. Skagit R. T. Co., 85 Wash. 29, 147 Pac. 885, 151 Pac. 1122.

possible by the nature of the business. In Louisville & Nashville R. R. Co. v. West Coast Naval Stores Co., 198 U. S. 483, 25 Sup. Ct. 745, 49 L. Ed. 1135, the court held that the public was not entitled to use as a public terminal for the delivery of freight a wharf built by the railway company over the water, putting the decision expressly on the ground that the wharf was built exclusively for the use of the railroad, and had never been dedicated to a public use as a public terminal. The distinction is pointed out by this court in Baker-Whiteley Coal Co. v. B. & O. R. Co., 188 Fed. 410, 110 C. C. A. 234. Donovan v. Pennsylvania Co., 199 U. S. 279, 26 Sup. Ct. 91, 50 L. Ed. 192, decided that a railroad company has a right to contract with one transfer company to furnish cabs for the use of passengers and exclude other cabmen from its premises; but the decision was on the ground that the business of the railroad was to carry and provide for the convenience of passengers, that it had undertaken and owed no public duty to cabmen, and therefore had the right to exclude them from its station, so long as such exclusion did not interfere with the reasonable accommodation of passengers.

The Southern Power Company has conferred great benefits on the public in developing water power which before was running to waste. For their enterprise and ability those who have invested in it and successfully managed it are entitled to liberal compensation. Yet development of this great natural resource connotes the possibility of power of accumulation and destruction, which no free people can allow to go unchecked in any direction or in any form of application. The people of North Carolina have explicitly provided for control and regulation of this power in very comprehensive terms, and it is not for the courts to defeat or emasculate that control and regulation by holding that it does not apply to one of the chief corporate activities of the Power Company. The corporation asked and received of the public the right of eminent domain, and the right to sell its current to independent vendors, which in turn furnish many towns and cities and thousands of homes and places of business in the state. It has used these rights, and is still using them. That the public has a most vital interest in their exercise seems plain beyond discussion. To state the claim now made—that the corporation can continue to exercise these powers bestowed by the public, without responsibility to the public, arbitrarily discriminating in rates—is to reject it.

Apply the practical test to the position that the defendant is not a public service corporation, except as to actual consumers: It would then be under obligation to furnish current without discrimination to cities for their street lights, and to provide water used for fire engines and street cleaning, but not for lights or water furnished by the city to private houses. As to these latter it could charge a city any price it pleased, or deny to cities power to provide them altogether. It would be under obligation to furnish power to an independent corporation for its street railway, but not for street lights or water for fire engine which it had contracted to provide for a city, or for water and lights for private dwellings and places of business. It would be under obligation to furnish manufacturers power to run their machinery, but not to furnish water and lights to their operatives.

The vital importance to the public economy and convenience that in the same city all these necessities should be directly supplied by the city itself, or by one corporation, is obvious. If the position taken by the Southern Power Company is sustained, it will achieve this practical result: It will continue to discriminate in favor of the Southern Public Utilities Company, by contracting with that corporation to the exclusion of other independent vendors, thus conferring upon it the control of the resale to consumers of hydroelectric power, to the detriment of the general public and the ruin of other independent vendors of hydroelectric power. Nothing short of direct controlling authority could induce us to assent to a result so restrictive of the North Carolina statute. We think there is no such authority.

An adjudication supporting the position of the Southern Power Company—that in its relations with independent vendors of current it is not a public service corporation, is under no public duty, and that its contracts are matters of purely private concern—would have grave consequences to that corporation itself. A city of North Carolina makes a contract with an independent corporation to furnish it hydroelectric current. The Southern Power Company in turn contracts to furnish current to that independent corporation. When the Southern Power Company undertakes to condemn a right of way for its lines of transmission to the designated city, it will find itself confronted by the contention that it could acquire no right of condemnation in the prosecution of a purely private business. We can discern no answer it would have to the contention, for it is elementary that the Legislature cannot confer a right of eminent domain to take private property for a purely private use. Cozard v. Kanawha Hardwood Co., 139 N. C. 283, 51 S. E. 932, 1 L. R. A. (N. S.) 969, 111 Am. St. Rep. 779; Walker v. Shaste Power Co., 160 Fed. 856, 87 C. C. A. 660, 19 L. R. A. (N. S.) 725; Fallsburg P. & M. Co. v. Alexander, 101 Va. 98, 43 S. E. 194, 61 L. R. A. 129, 99 Am. St. Rep. 855; 10 R. C. L. 40; Wyman on Public Service Corporations, § 226, and citations.

Lay aside these arguments for the moment, and consider the plain language of the North Carolina statute: It requires the Corporation Commission to "make reasonable and just rules and regulations to prevent discrimination * * * in furnishing electricity, electric light, current, power or gas." To sustain defendant's contention, the court would have to insert express limiting words in the statute which the Legislature saw fit to omit. There is not a word in the statute to suggest that the Legislature meant to impose the duty and power on the commission for the protection of consumers only, leaving others to whom current might be furnished without protection from discrimination. Surely the court has no power to say that the Legislature meant to provide a limitation which it refrained from expressing, namely, that furnishing current or power to independent vendors was not furnishing current or power within the unlimited terms of the statute.

It is important to remember that under its charter Southern Power Company had been given authority by statute to sell to independent vendors. Its right of eminent domain was also conferred by statute.

If the defendant's contention be sound, the Southern Power Company could have carried its lines over the entire state by condemnation. After it had done so, it could have furnished current to independent vendors, and then successfully claimed exemption from all regulations by the Corporation Commission of its entire business on the ground that the statute did not contemplate the prevention of discrimination in all current furnished, but only current furnished to actual consumers. Thus it would have availed itself of the state's power of eminent domain, and escaped all regulations of its business by the state.

It is our opinion that the decree of the District Court should be modified, and a decree entered enjoining the Southern Power Company from its threatened violation of duty to furnish hydroelectric power to the plaintiff, North Carolina Public Service Company, for resale and distribution at High Point and Greensboro, substantially as heretofore, without unjust discrimination in rates. All payments made to the Southern Power Company by the North Carolina Public Service Company will be adjusted in the District Court in accordance with this opinion. The rates and terms upon which current is furnished to the North Carolina Public Service Company and other corporations doing like business are, of course, subject to the rules and regulations of the North Carolina Corporation Commission.

Modified.

WADDILL, Circuit Judge (dissenting). On the 21st day of November, 1908, the Southern Power Company, appellee, entered into a contract with the High Point Electric Company to sell it electricity for redistribution in the city of High Point for the period of 10 years, and on the 23d day of December, 1908, likewise entered into a contract with the Greensboro Electric Company to sell it electricity for redistribution in the city of Greensboro for the period of 10 years. In 1909 the North Carolina Public Service Company, appellant, was chartered under the laws of North Carolina, and thereafter acquired the property and franchises of the High Point Electric Company and the Greensboro Electric Company, and had assigned to it the rights of those companies under their contracts aforesaid with the Southern Power Company. Under its charter the North Carolina Public Service Company was authorized to secure, develop, and operate hydroelectric companies, and to generate electricity, and sell and distribute it. Its powers in this respect were the same as those possessed by appellee, the Southern Power Company, and it was authorized to purchase the privileges and franchises of any other corporation doing an electric lighting, electric power, street car, or gas business, either for public or private use, or its own use for distribution and sale to others, and in the conduct of its business the said Public Service Company sold and distributed electricity that had been purchased from the appellee, in competition with the appellee.

Prior to the expiration of the 10-year periods named in said contracts, negotiations were had looking to the renewal of the same, but nothing substantial was accomplished by those efforts. The appellee offered to renew the contracts at the then established rate, and at

which it was then selling power to other customers, under substantially similar conditions, being an advance of one mill per kilowatt hour over the price it was furnishing power to the town of Charlotte through the Southern Utilities Company, under a contract made prior to the expiration of the 10-year period aforesaid, expiring in the year 1944. The advance in price was made necessary by reason of the very substantial increase in the cost and expense of generating and distributing electricity. This offer was declined, and pending the period during which appellee was temporarily furnishing power to avoid inconvenience to the public, after the expiration of the contracts aforesaid, the bill in this cause was filed to prevent the appellee from discontinuing the service, and to require it to continue to furnish power to said two cities and their citizens through the North Carolina Public Service Company.

The case as thus presented is a simple one, viz. whether appellee can be required, in the absence of a contract, to furnish appellant, the North Carolina Public Service Company, a competitor, with power, to enable the latter company to sell the same to the cities of High Point and Greensboro and the citizens of said two cities in competition with appellee. Appellee insists that, having made the contracts in question for a specified time, it did not thereby, or by any other act on its part, dedicate the use of its power to the public, or in any other manner. On the contrary, it indicated its intention not to do so, and entered into the contracts for the use of this power in the two cities, only for the limited periods covered by the contracts, and the contracts in terms specified that at the time of their termination the appellee should have the right to discontinue supplying the electricity therein contracted for.

Appellee Power Company does not deny that the cities in question, and their inhabitants, as consumers, have the right to call upon it to supply such power as may be within its ability to furnish; but it insists that it cannot be required to furnish power to the appellant Public Service Company for resale to the said two cities and their inhabitants, in competition with itself. It is this latter demand that is the vital issue in this case, and unless the contracts entered into by the two companies acquired by the appellant public service company, and both of which have long since expired, or some other act on its part constitutes a dedication of its right to sell electricity to the public, and thereby enabled the appellant public service company and other similar companies to call upon it to furnish power for resale and distribution, in competition with itself, confessedly no such right exists. In my opinion, it is entirely clear that no such dedication was made by the appellee power company, and at the expiration of the contracts with said two companies it had the undoubted right to decline to renew the same, although the obligation to furnish electricity to the two cities for their lawful corporate purposes, and to their inhabitants as consumers, to the extent of their ability, at reasonable and lawful rates, to be prescribed by the Corporation Commission of the State of North Carolina, necessarily followed.

The principles involved in this case are of far-reaching importance;

indeed, could hardly be of more serious concern to one engaged in the maintenance and operation of a public service corporation, charged with the obligation and duty to render efficient service to the public at reasonable remuneration. Appellee's business is sustained by its receipts from the sale of its power to its customer; and if the appellant, its direct competitor, engaged in the same business, can call upon appellee to furnish to it power to resell in competition with what it produces, how long could any business withstand such a strain? In the end the public would suffer, as no well-organized and strong business could long provide against the disastrous consequences that would necessarily flow from such unbusinesslike and chaotic conditions. To be wholly without means would place one in quite as good, if not a better, position than that of great strength, since it could secure without risk the benefits of the labor and capital of the strong until the latter was destroyed. A more dangerous blow could not well be struck at vested interests, and one that would eventually result in withholding capital necessary to start or maintain enterprises requiring large outlay. Authorities to support this position can be cited almost without number. Only a few need be given. Memphis & Little Rock R. Co. v. Southern Express Co., 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791; Evansville & H. Traction Co. v. Henderson Bridge Co. (C. C.) 134 Fed. 973; Express Co. v. Railroad, 111 N. C. 463, 16 S. E. 393; Elliott on Railroads, §§ 922, 974, and 1084; People ex rel. Oneida Tel. Co. v. Central Tel. Co., 41 App. Div. 19, 58 N. Y. Supp. 221; Home Telephone Co. v. Sarcoxie Light & Tel. Co., 236 Mo. 114, 139 S. W. 108, 36 L. R. A. (N. S.) 124.

In the majority opinion, the transactions between the appellee and the Southern Public Utilities Company, in the matter of sales of power to the latter company, are largely made the basis for the conclusion reached, which, in effect, holds that appellee company has so dedicated its rights to sell electric power as to entitle complainant the North Carolina Public Service Company to the relief it seeks, and that it is estopped from interposing the defenses made here to the claim of the appellant the North Carolina Public Service Company. Of course the appellee could have so conducted its business as to have dedicated its rights and privileges under its charter to manufacture and furnish electricity to the public generally, in which event it would not be heard to decline to furnish the same to the appellant as one of the public, for resale to the two cities involved here. But, if anything is manifest in this case, as well from the pleadings and proofs as from the findings of the lower court, it is that no such dedication has ever been or was intended to be made. On the contrary, appellee company has at all times carefully in terms so contracted as to be relieved from the implication of any such folly as it would have been guilty of, had it transferred its vast business interests from its own stockholders for the benefit of the public.

I find myself so far out of accord with the findings, reasonings, and conclusions arrived at by my brethren, as at all applicable to the facts of this case, that it is difficult for me, perhaps, to properly appreciate them. I might readily agree as to many of the positions taken, if I

could bring myself to believe that the condition of affairs described by them in point of fact exists. But I cannot, and suffice it to say that in this, as in all other litigation, we have to look to the pleadings and proofs to finally and intelligently ascertain just what are the merits of the case. So far as the transactions with the Southern Public Utilities Corporation, so much relied on, are concerned, as well as in respect to several other minor transactions with the other companies, the complainant's case is elaborately set up in its bill, and the appellee in its answer made full and detailed explanation and denials in respect thereto. Upon the issue thus joined the cause was heard, proofs taken orally under the new equity rules before the judge of the District Court, and upon full and elaborate hearing and arguments of counsel that court reached its conclusions and made its findings, fully sustaining the appellee's contentions against those of the complainant, the appellant. Upon the case thus heard and disposed of, and the findings and conclusions reached, this dissent is based. The contract entered into between the appellee, Southern Power Company, and the Southern Public Utilities Company, would in no event operate to dedicate the appellee's right to sell its power to the public as claimed, or prevent it from making lawful contracts with other persons or corporations in respect thereto, or to refuse to make such contracts. Memphis & Little Rock R. R. Co. v. Southern Express Co., supra, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791; Donovan v. Pennsylvania Co., 199 U. S. 279, 26 Sup. Ct. 91, 50 L. Ed. 192; Oregon Short Line & U. N. Ry. Co. v. Northern Pac. R. Co. (C. C.) 51 Fed. 465; Little Rock & M. R. Co. v. St. Louis S. W. R. Co., 63 Fed. 775, 11 C. C. A. 417, 26 L. R. A. 192; Prescott & A. C. R. Co. v. Atchison, T. & S. F. Co. (C. C.) 73 Fed. 438; Gulf, C. & S. F. Ry. Co. v. Miami S. S. Co., 86 Fed. 407, 30 C. C. A. 142; State v. Cadwallader, 172 Ind. 619, 87 N. E. 644, 89 N. E. 319.

In considering the subject, sight should not be lost of the fact that the appellee is in no sense or manner to be relieved of its full obligation and duty to serve all the public alike, upon just remuneration being paid. But appellant, a public service corporation, is not one of the general public, in the sense of a consumer. On the contrary, it is a competitor in business as a public service corporation, without the ability to produce electricity for sale, trying to ingraft itself on the appellee, with a view of securing its power, in order that it may deal in and resell the same in competition with the producer. The equities of the case are clearly with the appellee. The appellant has all to make and nothing to lose by the success of the litigation, since it is seeking to avail itself of the right to use the appellee's franchise in competition with it; whereas, in the case of the appellee, the situation is entirely different, in that it secured its charter to do business and is so engaged upon an extended scale, and at great expense, and is dependent upon having secured to it the rights given by its charter, to lawfully sell its output to its customers, without let or hindrance on the part of others, who have no interest therein except to avail themselves of its rights and privileges and franchises.

The decision of the majority will operate to deprive appellee of its

property without just compensation made therefor, and without according to it due process of law under the Fourteenth Amendment to the Constitution of the United States, as it will also deny to it the equal protection of the laws as guaranteed therein. Atchison, T. & S. F. R. Co. v. Denver & New Orleans R. Co., 110 U. S. 667, 4 Sup. Ct. 185, 28 L. Ed. 291; Memphis & Little Rock R. Co. v. Southern Express Co., supra, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791; L. & N. R. Co. v. Central Stock Yards Co., 212 U. S. 132, 29 Sup. Ct. 246, 53 L. Ed. 441; Lewis on Eminent Domain (3d Ed.) § 440.

So far as appellants, the cities of Greensboro and High Point are concerned, they are in no better or worse positions than they would be in respect to any other corporate matter in which they insisted upon making contracts with persons who had no means of performing the particular undertakings, instead of with those who are able to comply with their contracts, and who by law are under obligation to do so.

The decision of the lower court, in my judgment, should be affirmed.