### AMERICAN LIGHTING CO. v. PUBLIC SERVICE CORPORATION OF NEW JERSEY et al.

(Circuit Court, D. New Jersey.   October 3, 1904.)

1. PRELIMINARY INJUNCTION—DISCRETION OF COURT—ADEQUATE REMEDY AT LAW.

A nonresident corporation whose only interest in a city arises out of a contract with the municipal authorities to furnish burners for street lamps owned by the city and to supply gas for such lamps for a stated time, is not entitled in its own right to a preliminary injunction to compel a gas company to sell it gas for such purpose; and such an injunction will not be granted where it appears from the circumstances of the case that it would be detrimental, rather than beneficial, to the public.

In Equity.   On motion for preliminary injunction.

Albert C. Wall and John J. Treacy, for complainant.
Frank Bergen and Frederick J. Faulks, for defendants.

BRADFORD, District Judge. This is an application for a preliminary injunction at the suit of The American Lighting Company, a corporation of Maryland, against the Public Service Corporation of New Jersey, hereinafter referred to as the Public Service Corporation, the Hudson County Gas Company and The Jersey City Gas Light Company, corporations of New Jersey. The bill, among other things, avers in substance that The Jersey City Gas Light Company was incorporated March 1, 1849, and was about October 31, 1899, consolidated with the People's Gas Light Company of Jersey City, the Consumers' Gas Company of Jersey City and the Bayonne and Greenville Gas Light Company, under the name of Hudson County Gas Company, one of the defendants, which on or about June 1, 1903, granted, leased and demised its franchises, gas plants and gas works for a period of 900 years to the Public Service Corporation; that since June 1, 1903, the last named corporation, by virtue of its own corporate powers and the powers derived by it through the above mentioned consolidation and lease "has continued to maintain and operate a gas plant for the delivery and sale of illuminating gas and has delivered and sold such gas without discrimination in the City of Jersey City and vicinity"; and has "assumed the duties, burdens and liabilities cast upon it by law to supply gas to all persons and corporations, including your orator, who apply for gas and are ready and willing to pay for the same and to comply with all reasonable regulations" of the Public Service Corporation for the sale and delivery thereof; that the Mayor and Aldermen of Jersey City lawfully entered March 2, 1904, into a written contract, duly executed, with the complainant, whereby the complainant agreed to provide, operate and maintain 480 gas lamps attached to 480 lamp posts owned by the Mayor and Aldermen of that city, situate in divers of its streets, lanes and alleys, and further agreed to furnish the gas to be used in those lamps in accordance with the terms of the contract and its specifications; that the lamp posts, above referred to, belonging to Jersey City,

are connected by gas pipes running through said posts and connecting with gas mains or conduits operated and continuously supplied with illuminating gas by the Public Service Corporation; that in order to perform its contract the complainant is placing its burners, lamps and fixtures upon the said lamp posts in Jersey City, and is now ready and prepared to receive illuminating gas from the Public Service Corporation, by the means aforesaid, and to supply the said street lamps with gas in accordance with its contract, and has accordingly notified the Public Service Corporation of its desire to purchase the necessary gas and of its readiness and ability to comply with all reasonable regulations and requirements for obtaining the same, but the Public Service Corporation, "notwithstanding its duty and obligation to refrain from interfering with or checking the passage of gas into the lamp posts aforesaid, and from thence to the lamps of your orator, has threatened to shut off and prevent the passage and delivery of gas through its mains, pipes and conduits to the lamp posts and lamps aforesaid"; that the Public Service Corporation "enjoys a complete monopoly of the manufacture and sale of illuminating gas for public use in the streets of Jersey City"; that there is no other source of supply from which the complainant can obtain gas for consumption at the lamp posts aforesaid, and if the defendants, or either of them, be allowed and permitted to shut off the supply of gas from the lamp posts and lamps, or in any way or by any method to discriminate against the complainant by refusing to supply gas for use in the lamps and their burners, irreparable wrong and injury will be done to the complainant, as well as to the citizens and inhabitants of Jersey City, for the reason that the lamp posts in question represent the greater part of the public lighting system of that city and if the supply of gas is shut off as threatened, the city will be left in darkness during the night; that on or about January 18, 1904, the president of the complainant called upon the president of the Public Service Corporation and told him that the Mayor and Aldermen of Jersey City had approved the proposals of the complainant submitted to the municipal authorities of that city, and subsequently incorporated in the above mentioned contract of March 2, 1904; that the president of the Public Service Corporation, on receiving the above information, stated to the president of the complainant that the Public Service Corporation would not furnish to the complainant gas necessary to enable the complainant to carry out such a contract as that above mentioned; that since the execution of that contract the complainant duly notified the Public Service Corporation in writing that the complainant was ready and willing to receive gas for the above mentioned lamps and lamp posts and pay for the same and to "comply with all other reasonable regulations and requirements" of that corporation; that the complainant further offered in writing to pay for gas the same prices as were charged by the Public Service Corporation to its other consumers of gas in Jersey City; that the complainant has given bonds to the Mayor and Aldermen of that city, with satisfactory security, in the sum of $3,000 for the performance of its contract; that it has expended in

the preparation and acquisition of materials and tools for the performance of its contract the sum of $3,500; that it is the owner of a patent burner by which a greater candle-power can be produced by the consumption of the same amount of gas than by any other known burner; that the economy in the consumption of gas made possible by the use of its burner is more than sufficient to enable the complainant to perform its contract with Jersey City and to pay to the defendant the amount of the price charged by them to their other customers for the gas supplied by them in Jersey City; that the defendants are occupying by their mains, conduits and pipes the public streets, lanes and alleys of Jersey City by virtue of the powers and authority granted to and conferred upon them by the legis-lature, and by the consent of the municipal authorities of that city; and that the gas conveyed by these mains flows through the said pipes to the lamp posts so owned by the city. The bill prays, among other things, that the defendants may be restrained from discriminating between the complainant and other consumers of gas in Jersey City and from diminishing, turning off, interfering with or stopping the present passage and flow of gas to, in and through the said lamp posts and to the said burners affixed thereto by the complainant, and also for a preliminary injunction restraining the defendants in like manner pending the final determination of the suit.

A large number of affidavits and exhibits have been filed in support of and in opposition to the motion for a preliminary injunction, and many legal questions have been elaborately discussed by counsel on both sides. It is unnecessary in arriving at a conclusion to review in detail the affidavits and exhibits or to express an opinion upon all the legal points raised. The complainant was created under the general incorporation laws of Maryland December 4, 1900, with power to carry on its operations in Maryland and other states. In its charter it is described as follows: .

"The said corporation so formed is a corporation to manufacture, furnish, sell, supply, buy and handle burners, mantles, posts, shades, lamps, lanterns and all other requisites and appliances appropriate and necessary to be used in lighting streets, roads, lanes, alleys or other passage ways or highways, whether public or private, as well as Parks, Grounds, Buildings and other places, and to contract with any person or persons, body corporate or politic, for furnishing any of the above, and all labor necessary to operate the same; that the term of existence of said corporation is limited to forty years; and that the said corporation is formed upon the articles, conditions and provisions herein expressed, and subject in all particulars to the limitations relating to corporations which are contained in the general laws of this state."

The certified statement, designation and report of the complainant, filed in the office of the Secretary of State of New Jersey February 19, 1904, for the purpose of enabling the complainant to carry on business in that state, sets forth powers of precisely the same character as are above enumerated, and no others. It does not appear that the corporate authority of the complainant has in any manner been enlarged or modified. It entered, as stated in the bill, into its contract with the Mayor and Aldermen of Jersey City March 2, 1904. In that contract, among other things, it undertook for the

compensation provided for in it and the specifications annexed thereto and made part of it, to supply and maintain its burners and supply illuminating gas for the same for 480 street lamps in Jersey City until November 30, 1904. It may be a question whether the complainant had corporate authority to purchase and supply to customers illuminating gas. As before stated, its power was to "manufacture, furnish, sell, supply, buy and handle burners, mantles, posts, shades, lamps, lanterns, and all other requisites and appliances appropriate and necessary to be used in lighting streets, roads," &c., and to contract with any person or persons, body corporate or politic for furnishing any of the above, and all labor necessary to operate the same. If the right to furnish, sell or supply gas was included in the powers above enumerated, it would seem that such right must be included in the power to furnish, sell or supply "other requisites and appliances appropriate and necessary to be used in lighting streets, roads," &c. Whether the canons of construction applicable to the grant of power to such a corporation will permit the word "requisites" as used in the context to include gas may be questionable. But on the assumption that the complainant possessed authority to enter into the contract of March 2, 1904, it becomes material to inquire whether the Public Service Corporation was authorized to furnish gas to the complainant to be used by the latter in the performance of its contract with Jersey City. The authority of The Jersey City Gas Light Company to furnish gas in that city passed mediately to the Public Service Corporation, incorporated under the laws of New Jersey on or about May 15, 1903, by virtue of the lease to it by the Hudson County Gas Company for 900 years, mentioned in the bill. Counsel on both sides have referred to and evidently treated as material the grant of power to The Jersey City Gas Light Company to supply gas in Jersey City as measuring or limiting the authority of the Public Service Corporation to do the same. By an amendment approved March 15, 1859, of the charter of The Jersey City Gas Light Company, it was, among other things, provided as follows:

"That the said company shall provide and furnish to any person or persons, corporations or companies, body politic, the gas by them manufactured who are willing to comply with the by-laws of the said company, and that said company shall not refuse to furnish such gas to any person, corporation or company aforesaid, desirous of consuming the same, on account of the non-payment of any sum or sums of money due to them for gas, from any person or persons, corporations or company, body or bodies politic, who shall have formerly occupied the premises or any part thereof, upon which such gas shall be required."

By a further amendment of the charter of the same company approved March 29, 1864, it was provided as follows:

"That the said company shall provide and furnish to any person or persons, corporations or companies body politic residing or situated in Jersey City the gas by them manufactured, who are willing to comply with the by-laws of the said company, at all hours during the day and night, and that said company shall not refuse to furnish such gas to any person, corporation or company as aforesaid, desirous of consuming the same either during the day or night."

It is contended on the part of the defendants that the latter of the two amendments repealed or modified the former in such manner as to restrict the duty of the company, in furnishing gas, to provide it only for persons residing or situated in Jersey City. This view seems to have been adopted by the court of chancery in New Jersey. Vice-Chancellor Pitney, in his opinion delivered March 17, 1904, in the suit of the Public Service Corporation of New Jersey, Hudson Gas Company and The Jersey City Gas Light Company v. The American Lighting Company and Mayor and Aldermen of Jersey City, 57 Atl. 482, said:

"The complainant, the Public Service Corporation, is the lessee for a long term of years, and in the possession as such, of the property of the other complainants, the Hudson County Gas Company and The Jersey City Gas Light Company. The complainants own and control and have been in the undisputed possession, for many years, of a gas manufacturing and distributing plant in the city of Jersey City, which distributing plant covers the entire city, and the companies are enjoying the franchise of laying and maintaining their gas mains under the surface of the streets of that city. They have for many years supplied the householding inhabitants with gas for domestic use, and have also, for a like period of time, supplied the municipality with gas for street lighting purposes. * * * The defendant, the American Lighting Company, is a corporation of the State of Maryland, and has no franchise whatever in the State of New Jersey or in the city of Jersey City; nor does it pretend to have any. It is simply the proprietor of what it claims to be a peculiarly meritorious light producing lamp, or burner, which it claims will produce a much greater amount of light from the same amount of gas than the burner heretofore in use by the complainants and known as the 'Welsbach burner.' By its affidavits it states that it has recently introduced its burners into several cities, including Baltimore, with great success. * * * This being its sole business, and, it not being either a citizen or householder of Jersey City, it has, in my judgment, no standing whatever, in its own right, to demand and receive from the complainants a supply of gas for any purpose whatever. * * * I am entirely of the opinion that the defendant, the Lighting Company, has no standing whatever, in its own right, to demand from the complainants a supply of gas. For the simple reason, above stated, that it is neither a householder nor a resident of Jersey City, and the obligation which is imposed upon complainants by reason of their enjoyment of a public franchise of laying mains in the streets to furnish gas, extending only to residential citizens of the city and to the municipality. It is quite absurd to say that any person who might happen to be walking along the street, and yet be destitute of any local habitation within the corporate limits of Jersey City has the least right to demand a supply of gas from the complainants."

The opinion of the court of chancery of New Jersey upon the construction and effect of a charter of a New Jersey corporation is entitled at least to great weight here.

But, if it be assumed that whatever doubt may inhere in the foregoing considerations should be resolved in favor of the complainant, the motion for a preliminary injunction is met with a fatal objection. It does not appear that the complainant is the owner or occupant of any manufacturing plant or other premises in Jersey City, or of any property there requiring a supply of illuminating gas for its beneficial enjoyment. The fact that gas is not supplied to it does not affect its enjoyment of any property rights other than those it may have under or by virtue of its contract with Jersey City. Whatever interest it may have arises under that contract and is restricted to the profits or other benefits it might realize

from its due performance. The purpose of this suit is to realize such profits or other benefit. If Jersey City has wrongfully broken its contract with the complainant there is an adequate remedy by way of action for the recovery of damages. Or, if the defendants have wrongfully prevented the complainant from performing its contract with the city, there is a similar adequate remedy. The circumstances of this case clearly disclose the impropriety of injunctive relief. In Harriman et al. v. Northern Securities Co. et al., 132 Fed. 464, this court in discussing the principles applicable to the award or denial of a preliminary injunction, among other things, said:

"The granting or refusal of a preliminary injunction, whether mandatory or preventive, calls for the exercise of a sound judicial discretion in view of all the circumstances of the particular case. Regard should be had to the nature of the controversy, the object for which the injunction is sought, and the comparative hardship or convenience to the respective parties involved in the awarding or denial of the injunction."

Jersey City, although its interests are directly involved in this controversy, was not joined either as a complainant or defendant; nor has it intervened or applied for leave to intervene as a party. That city is now supplied with gas by the Public Service Corporation; and it does not appear that the municipal authorities complain of the fact that the gas and burners used are supplied by the Public Service Corporation, and not by the American Lighting Company. To award an injunction, which, to be operative, would necessarily be mandatory in its provisions, would alter the existing status and probably result in prolonged litigation detrimental to the interests of the public. This is all the more apparent in view of the fact that the court of chancery in New Jersey in the case already referred to has awarded an injunction restraining The American Lighting Company and the Mayor and Aldermen of Jersey City from removing any of the lamps owned or leased by the Public Service Corporation from lamp posts in Jersey City, or detaching any of the said lamps from the pipes or risers in the said posts, or from taking or using any of the gas belonging to the complainants therein for the purpose of supplying the street lamps in Jersey City or for any purpose whatsoever, except upon terms and conditions wholly inconsistent with the relief prayed by the complainant in the present suit. It is unnecessary to discuss or refer to other obstacles with which the complainant seems to be confronted in the present case.

The motion for an injunction is denied; the costs to abide the event of the suit.