ROGERS IRON WORKS, Appellant, v. PUBLIC SERVICE COMMISSION OF MISSOURI AND JOPLIN WATER WORKS COMPANY.—18 S. W. (2d) 420.

Division One, June 7, 1929.

*A. W. Thurman* for appellant.

*D. D. McDonald, Grayston & Grayston* and *C. H. Dickey* for respondents.

126

FRANK, J.—This case originated before the Public Service Commission by appellant filing a complaint against the Joplin Water Works Company praying for an order of the commission requiring said water company to restore to appellant certain water service which it had theretofore been receiving but which had been discontinued by said water company. After a hearing, the commission dismissed appellant's complaint. On review the circuit court affirmed the order of the commission and complainant appealed.

The Joplin Water Works Company is a public service corporation located in the city of Joplin and engaged in the business of furnishing water to consumers in said city. The appellant, Rogers Iron Works, Inc., is a corporation located in the city of Joplin and engaged in the manufacture of mining machinery and equipment and has in its employ from one to two hundred men. Its plant occupies an entire block of ground. In the prosecution of its business it uses daily about thirty thousand gallons of water. Appellant has on its premises a well about one thousand feet deep, which is equipped with a deep well pump. Water is pumped from this deep well into a standpipe which holds about seventy-six thousand gallons. From this standpipe water is conveyed by means of pipes to various places in appellant's plant where and when it is needed in the prosecution of the work in said plant, or for fire protection on the inside of the building and for the comfort and safety of the employees working therein. In addition to the thirty thousand gallons used daily by appellant, it sells to the Frisco Railroad about eighty thousand gallons per day and also supplies twelve dwelling houses with water for domestic purposes. The railroad and the dwelling houses are not located on appellant's premises and are not used by it in the prosecution of its business, but are independent water users, and although located along the Joplin Water Works Company's mains and within easy access thereto, appellant supplies them with water and collects a fee therefor. Appellant's deep well furnishes it an adequate supply of water except when its pump is out of order. The capacity of the well is one hundred and twenty-five gallons per minute and the pumping capacity is three and one-half million gallons per month. The Joplin Water Works Company's mains were con-

nected through a two-inch meter with the pipes and mains of appellant's water system for the purpose of supplying appellant with water in case of a breakdown of appellant's deep well pump or any other emergency rendering it impossible for appellant to get its water supply from its own deep well. This connection had been maintained for several years prior to the institution of this suit.

In September, 1927, the Water Works Company disconnected the two-inch meter and installed in its stead a five-eighths-inch meter. This proceeding was instituted to compel the water company to reinstall the two-inch meter.

The question for determination is whether or not the respondent Water Works Company should be forced to furnish a breakdown water service to a competitor. There is no question but what appellant must be regarded as a competitor of the Water Works Company. The evidence shows that appellant had been selling water to the Frisco Railroad Company for a number of years at nine cents per thousand gallons. In 1927, when its contract with the railroad was about to expire, the water company opened negotiations with the railroad company with a view of obtaining a contract to sell it water in the future. The railroad company concluded to terminate its contract with appellant, and buy its water from the water company at eight cents per thousand gallons and so notified appellant and the water company. When appellant received notice of the cancellation of its contract with the railroad, it then offered to furnish the railroad with its water supply at seven cents per thousand gallons and thus retained the business and continued to sell water to the railroad. In addition to this, it supplied twelve dwelling houses with water for domestic use.

What appellant asks in this case is that the water company be compelled to connect its water system with that of appellant's so that in case of a breakdown or other emergency in appellant's plant rendering it impossible for appellant to get its water supply from its own deep well, the water company will be in a position to furnish it water until the breakdown is repaired or the emergency removed, thus enabling appellant to keep its contract with its customers and furnish them water during such emergency, as well as obtaining water necessary to the operation of its manufacturing plant during said time. It may be that appellant would be entitled to the connection asked for in order to get water necessary to the operation of its manufacturing plant during an emergency, but when it is selling water in competition with the water company, to customers in the franchise territory of the water company, a different question is presented. This exact question was decided in People ex rel. New York Edison Co. v. Public Service Commission, 181 N. Y. Supp.

259. In that case, Acker et al., a partnership, had a private electric generating plant from which it supplied itself and its tenants with electric current. It also sold electricity to other customers in the same block. The Public Service Commission ordered relator to furnish said partnership a breakdown service. On review, the order of the commission was reversed. In disposing of the case the court said,:

"Whether or not the petitioner is an electrical corporation coming within the supervision of the Public Service Commission, it is perfectly clear that the statute intended to make a distinction between those corporations which were manufacturing gas or electricity for their own purposes, or the purposes of their tenants, and those who went further and assumed to sell their gas or electricity to outsiders. The main significance of that distinction would seem to be that, while it is engaged in selling electricity to outsiders other than its own tenants, it has not the rights of the public to demand service upon payment of the legal rates, but it has only the rights that one public service corporation has as against another, which seems to be settled by the authorities cited, and does not include the right to demand service of a competing company for the purpose of enabling the petitioner to undersell that competing company and take away its customers."

A somewhat similar question was before this court in Home Telephone Co. v. Sarcoxie Light & Telephone Co., 236 Mo. 114, 139 S. W. 108. It was there contended that one telephone company had a lawful right to force physical connection of its lines with the lines of another company for its own private business. In disposing of the contention there made, we said at page 137:

"To hold that the Kinloch Company could have built its lines from the East to the city of St. Louis, and then under our laws could have compelled a physical connection with the Bell Company lines, and used the same for forwarding their own business, to my mind is preposterous. It would be a virtual confiscation of property rights. Corporations are separate entities, and as such are only entitled under our statutes to the same rights as an individual. This right is to be treated as the general public is treated, and not otherwise. Each and every individual cannot build independent phone lines and compel a phone company to connect them with the switchboard. Competing companies have no greater rights. But, in addition to all this, the contention of defendant, if sustained, would not encourage competition, but rather retard it."

In the instant case, it was the duty of the water company, as a public service corporation, to supply water to all members of the general public in the city of Joplin, at the lawful rate and in accordance with the terms of its franchise and the ordinance under

which it operates. If appellant were demanding a water service sufficient for the operation of its manufacturing plant, it, as a member of the general public, would be entitled to such service. On the other hand, when appellant steps aside and essays to engage in selling water to members of the general public in competition with the water company, it will not, in such capacity, be regarded as a member of the general public but as a competitor of the water company, and its rights in the premises must be measured by the law which determines the rights of one public service corporation against another, and not by the law which fixes the rights of a member of the general public against a public service corporation. Speaking to a kindred question in Evansville & H. Tr. Co. v. Henderson B. Co., 134 Fed. 973, the court said,

"One water company or one telephone company or one telegraph company or one street railway company or one railroad company, while bound appropriately to serve the general public, cannot, unless under express statutory enactment and by due process of law thereunder, be compelled to give its property to the uses and benefits of a rival, except by some form of condemnation. The rival is not, ordinarily, to be included in the term 'general public.' "

When appellant sold water to the railroad and to individuals, it was carrying out its own private contract with its customers. It would not accord with reason or justice to say that the water company must furnish water to appellant, a competing company, to enable it to perform its own private contract, and we decline to so hold. This conclusion disposes of appellant's contention that the unwarranted and unlawful act of the water company in disconnecting the two inch meter deprived it of property rights and amounted to the taking of property without due process of law. Appellant never had a lawful right to the service it is now demanding; therefore the act of the water company in discontinuing such service was neither unwarranted or unlawful. Such service, if granted, would be a special privilege, unfair and discriminatory. The continued enjoyment of a special privilege does not ripen into a right where, as here, such special privilege is unfair and discriminatory. [St. Johnsbury v. N. England T. & T. Co. (Vt.), P. U. R. 1923C, 365, 373.]

Contention is made that appellant is not a public-service corporation and that the sale of surplus water by a private corporation is not subject to the police power of the State.

We are not concerned whether appellant is a public-service or a private corporation, because in either event the water company would not be compelled to furnish it with water for resale to enable it to fulfill its own private contract to furnish its customers with water. [Authorities supra.]

It is contended that the five-eighths-inch meter which the water company installed instead of the two-inch meter does not furnish a sufficient water supply to protect appellant's property in case of fire. There is evidence to that effect. On the other hand there is evidence that the water company, on application, furnishes a service designed for protection against fire hazard. Such a service is separate and distinct from the service for domestic or industrial use. Appellant never applied for this service, and is, therefore, in no position to contend that the three-eighths-inch meter service which was furnished for industrial use is not sufficient in case of a fire hazard.

The authorities cited by appellant in support of its contentions were decided on facts essentially different from the facts in this case and for that reason they are not of controlling influence here.

The judgment of the trial court was correct and should be affirmed. It is so ordered. All concur.