HOLMES ELECTRIC COMPANY, INC., v. CAROLINA POWER AND LIGHT COMPANY.

(Filed 20 November, 1929.)

**1. Jury C b—Right to trial by jury in mandamus proceedings is waived by failure to make motion therefor in apt time.**

The parties to an action may waive their right to trial by jury guaranteed by our State Constitution, Article IV, sec. 13, but the manner of such waiver is governed by statute, C. S., 568, and where the plaintiff in mandamus proceedings to compel a power company to furnish it electricity for redistribution to its customers at retail fails to move in apt time

for the preservation of its right to trial by jury, C. S., 868, but makes such motion after the judge has heard the evidence and argument, and is ready to decide the facts at issue and enter judgment thereon, the motion is not made in apt time, and the right to trial by jury is waived.

**2. Electricity B a—In this case mandamus to compel power company to sell current to plaintiff for resale at retail was properly denied.**

Where an electric power company has not held itself out or furnished other distributing lines electricity for redistribution or resale to the latter's customers, it may not be compelled to do so by mandamus, as it has the right to restrict its services to the consumers of electricity alone when not discriminatory against distributors. *Southern Power cases*, 179 N. C., 18, 330; 180 N. C., 335, cited and distinguished.

CIVIL ACTION, before *Cranmer, J.*, 27 March, 1929, at Chambers, CUMBERLAND County.

The plaintiff alleged that it is a public-service corporation and had constructed and maintained a system of poles and wires and other necessary things to transmit, deliver and sell electric current to persons, firms and corporations living or having places of business outside of the corporate limits of the city of Fayetteville in Cumberland County, and running in every direction therefrom a distance of approximately nine miles, except the territory embraced within the corporate limits of the town of Hope Mills. On 7 February, 1929, the plaintiff made application to defendant to be allowed "to purchase from said defendant primary electric current in the approximate amount of 20,000 K. W. H. per month, such electric current to be supplied by the defendant and taken by the plaintiff at or near a substation built and maintained for the delivery of current by the defendant, near the Victory Mills, near said city of Fayetteville," etc. Plaintiff was desirous of purchasing current for the purpose of resale or redistribution to other parties within the area described.

The defendant refused to furnish electric current for redistribution upon the ground that such resale of current would constitute the plaintiff a competitor of the defendant or of the city of Fayetteville with which the defendant had a contract for the sale of electric current for use and redistribution by said city, and further, that to furnish current to the plaintiff under the circumstances would constitute a breach of the contract existing between the defendant and the city of Fayetteville.

There was evidence to the effect that the plaintiff did not for the years 1927 and 1928, nor for any other years file with the Corporation Commission an annual report required to be filed by all public utilities operating in the State of North Carolina, nor has the plaintiff filed with or secured the approval of the Commission of rates to be charged by it. There was further evidence that the plaintiff had not filed with the Department of Revenue reports required by the Revenue Act of

1927. It further appeared that the plaintiff corporation had listed no taxes for property in Cumberland County.

The judgment was as follows:

"This cause coming on to be heard at Fayetteville, N. C., on 27 March, 1929, having been continued by consent until this day, and being heard upon the pleadings, affidavits and exhibits filed, the court finds the following facts:

1. Plaintiff, Holmes Electric Company, Inc., is a corporation doing business in the city of Fayetteville, N. C., under the powers granted in its charter, as appears of record, and the defendant, Carolina Power and Light Company, is a public-service corporation, doing business as such, and it owns, operates and maintains plants, transmission lines and other equipment for the generation and distribution of electric power.

2. That the plaintiff owns certain disconnected lines of poles and wires near the city of Fayetteville, N. C., over which the city of Fayetteville transmits and delivers electric current to various consumers outside of the corporate limits of the city of Fayetteville, and the city of Fayetteville, through its Public Works Commission, collects and receives the revenue from such consumers, and the plaintiff company is not now and never has been, a distributory of electric current, or electric power, and has only maintained the lines over which the current is delivered and charged various tap fees therefor. That plaintiff company has demanded from the defendant that the defendant deliver to the plaintiff electric current to be used solely for redistribution, and as such the plaintiff is not a consumer of electric current, but expects to deliver such current to consumers at a profit.

3. That the Carolina Power and Light Company has never entered the field of delivering current for redistribution to persons, firms or corporations who expected to use the same solely for redistribution at retail, but it has only sold its current to municipal corporations for redistribution among the citizens of the municipality and community and to large manufacturing corporations who purchased electric current in large quantities for industrial purposes and for redistribution to its employees.

4. That if the plaintiff were furnished electric current by the defendant, same would be used by the plaintiff in competition with the defendant and the city of Fayetteville, with whom the defendant has a contract, as set out in the pleadings.

Under the foregoing facts, the court being of opinion that the application should be denied;

It is thereupon considered, ordered and adjudged by the court that the application for writ of mandamus be, and the same is hereby denied, plaintiff to pay the costs of this action."

From the foregoing judgment the plaintiff appealed.

*Brooks, Parker, Smith & Wharton and C. Murchison Walker for plaintiff.*

*W. H. Weatherspoon, Pou & Pou and Rose & Lyon for defendant.*

BROGDEN, J. 1. Can a plaintiff institute a mandamus proceeding returnable before a Superior Court judge, appear at the hearing, and after a full hearing and argument by counsel representing plaintiff and defendant, and after judgment has been tendered by the defendant, thereupon demand a jury trial upon issues of fact raised by the pleadings?

2. Was the judgment denying the mandamus correct?

The right of trial by a jury is guaranteed by the Constitution. Article IV, section 13, of the Constitution of North Carolina provides: "In all issues of fact, joined in any court, the parties may waive the right to have the same determined by a jury, in which case the finding of the judge upon the facts shall have the force and effect of a verdict by a jury." The Constitution, of course, does not prescribe the method by which a jury trial may be waived. Such provision is made by statute. C. S., 568, provides three methods of waiver.

A mandamus proceeding, however, is governed by C. S., 868, when the relief sought is other than a money demand. This statute provides in substance that the summons must be made returnable before a judge of the Superior Court at Chambers and upon the return date, "the court, except for good cause shown, shall hear and determine the action, both as to law and fact. However, when an issue of fact is raised by the pleading, it is the duty of the court, upon the motion of either party, to continue the action until the issue of fact can be decided by a jury at the next regular term of the court." The plain meaning of the statute is that the judge has the power to hear and determine the law and the facts; but, if an issue of fact is raised in the pleadings, and either party moves for a jury trial, the power of the judge to proceed further is at an end and he must continue the action until such issue of fact can be decided by a jury at the next regular term of court. It is, therefore, apparent that the right of jury trial is dependent "upon the motion of either party" (*Lenoir County v. Taylor,* 190 N. C., 366, 130 S. E., 25); and unless a party shall move for a jury trial in such cases, the issue may be determined by the court. *Cannon v. Mills Co.,* 195 N. C., 119, 141 S. E., 344.

It is thoroughly settled that where rights are dependent upon a motion, such motion must be made in apt time. Was the motion in the case at bar made in apt time as contemplated by law?

The record discloses that "after the argument and when the judgment was tendered by the defendant, counsel for the plaintiff made the fol-

lowing motion: "Plaintiff moves the court for a jury trial on the issues of fact raised by the pleadings for that it is a seriously controverted fact whether or not the defendant has been selling electric current to persons, firms and corporations for resale or redistribution, and for that it also is a seriously controverted fact as to whether or not the plaintiff and the defendant are competitors." The record further discloses that this motion was made "after full hearing and argument by counsel representing plaintiff and the defendant and when the judgment was tendered by the defendant." In *Baker v. Edwards,* 176 N. C., 229, 97 S. E., 16, this Court declared: "The defendant had attacked the report by exceptions, alleging radical error in it, and if plaintiff was not willing, as his conduct did not indicate, that the judge should hear and decide upon these exceptions with a jury, he could have enforced his constitutional right by framing such issues on defendant's exceptions as he thought were proper, and have them passed upon, not by the court, but by a jury, so that he might exercise his constitutional right and have the full benefit thereof by having a jury say whether there was any error of the referee, as specified in the defendant's exceptions. But this he did not do, but, by his silence, if not by his affirmative action and conduct, he manifestly evinced his purpose to make what he considered a wise and safe election, and have the judge decide upon the exceptions of defendants. If we should permit him now, after deliberately making this choice, and lost, to take another chance, it would not be fair to the defendants, who had trusted the matter to the judge, and who supposed, and had the right to suppose, that the plaintiff had likewise done so. The law rarely gives a litigant more than one fair chance." *Lumber Co. v. Pemberton,* 188 N. C., 532, 125 S. E., 19; *Jenkins v. Parker,* 192 N. C., 188, 134 S. E., 419.

The words "apt time" have been defined by this Court to refer "to the *order* of proceeding, as *fit* or *suitable* time." . . . When anything is done in proper *order,* then whether the time is long or short, makes no difference. *Pugh v. York,* 74 N. C., 383. For instance, an objection to remarks made by a judge during the trial must be made in apt time. An objection made after verdict is not in apt time. *S. v. Brown,* 100 N. C., 519, 6 S. E., 568; *S. v. Tyson,* 133 N. C., 692, 45 S. E., 838. It has also been held that "a party to an action cannot be heard to demand a jury trial after the facts are found against him when he has offered evidence and submitted to a trial by the court without objection." *Drewry v. Bank,* 173 N. C., 664, 92 S. E., 593.

In the case at bar, obviously, the motion for a trial by jury was not made until the judge had intimated his opinion and judgment in accordance therewith had been tendered by the defendant. Therefore, by analogy the motion came after verdict and under all the decisions was not made in apt time.

The second question of law involves the correctness of the judgment rendered. The plaintiff relies upon the *Southern Power Company cases,* reported in 179 N. C., 18, 101 S. E., 593; 179 N. C., 330, 102 S. E., 625; 180 N. C., 335, 104 S. E., 872, 282 Fed., 837. The *Power cases* reported in 179 N. C., 18, and 179 N. C., 330, develop and declare the principles of law pertinent to a decision of the present case. It should be observed at the outset that these cases were decided by a sharply divided Court. The true theory of the decision is contained in the opinion of *Justice Brown* upon the petition to rehear, reported in 179 N. C., 330. The opinion declares: "In my opinion the defendant had the right originally to confine its sales and contracts to those desiring electricity for direct personal consumption, and thereby retain control of the number of its consumers, limiting them to that number it could adequately serve. But when defendant voluntarily entered the field of supplying current to a person or corporation which does not desire it for consumption, but to sell and distribute to others for their consumption, the case is changed. It becomes subject to the provisions of law that it must extend the same treatment to all persons and corporations who stand in like case. It cannot sell to one and arbitrarily refuse to sell to another. One corporation desiring current from it for distribution purposes prima facie has precisely the same right to obtain it as another. A public-service corporation cannot arbitrarily refuse to supply one of a class which it has undertaken to serve. It must justify its refusal by good reason.

If the defendant in the beginning had elected to supply only the individual consumer, I am satisfied it could not have been compelled to supply smaller corporations engaged in retailing the electric current. But when defendant commenced and continued to sell its current to such smaller corporations for purposes of resale and distribution, every such corporation has an equal right, and it must not discriminate."

Thus it is manifest that the decisions of the Court in the *Power cases* rested upon the fact that the defendant had entered the field of selling and supplying current for resale and redistribution. Having so entered the field, it could not thereafter make arbitrary discriminations.

The record in the case at bar discloses that the trial judge found as a fact that "the plaintiff company is not now and never has been a distributory of electric current, or electric power, and has only maintained lines over which the current is delivered and charged various tap fees therefor." The court further found "that the Carolina Power and Light Company has never entered the field of delivering current for redistribution to persons, firms or corporations who expected to use the same solely for redistribution at retail," etc.

These findings of fact take this case out of the boundary of the *Power Company cases* upon which the plaintiff relies, and the judgment rendered by the court upon the facts appearing in this particular record correctly applies the law as formerly declared by this Court.

Affirmed.