CAROLINA POWER AND LIGHT COMPANY v. W. G. REEVES AND WIFE,
LENA REEVES.

(Filed 26 February, 1930.)

**1. Eminent Domain C e—One whose land is taken is entitled to value of
land taken and damages to contiguous land, less special benefits.**

In proceedings to condemn lands of a private owner for the erection of an electric power transmission line, it is required of the jury of view to fix the damages to the owner for the lands to be taken together with peculiar damages to his contiguous lands resulting therefrom, less any special benefits accruing to him by reason thereof.

2. **Eminent Domain A b—Statutory provisions as to condemnation are to be strictly construed.**

The right to take private property for public use is governed by statute, and the statutes under which this right arises are to be strictly construed.

3. **Eminent Domain D c—Judge has discretionary power to remand the case to the appraisers or retain it for trial in the Superior Court.**

Where the petitioner in condemnation proceedings and the owner of the land sought to be condemned both except to the report of the appraisers and appeal from the confirmation of the report by the clerk to the Superior Court, it is within the discretion of the trial judge to remand the case for another appraisal for errors committed by the appraisers in making the award or for ambiguity in their report, or to retain the entire case for a jury trial and determination in the latter court, C. S., 1724, and his refusal to remand the case will not be held for error.

APPEAL by defendants from *Finley, J.,* at April Term, 1929, of TRANSYLVANIA. Affirmed.

This is a petition brought by plaintiff, a public-service corporation, against defendants to condemn a certain right of way over defendants' land, under chapters 32 and 33 C. S., for a transmission electric power line. The clerk duly appointed commissioners to enter upon the land and assess the damage and special benefits to the owners. On 4 January, 1929, they made the following report:

"We visited the premises of the owners, and after taking into full consideration the quality and quantity of the land aforesaid, we have estimated and do assess damages aforesaid at the sum of $2,000. We have estimated the special benefits which the said owners will receive from the construction of said electric line to be the sum of ............ dollars."

On 7 January, 1929, the clerk made the following order:

"And it appearing to the court from said report that they failed to comply with the statute in making said report; it is now ordered by the court that this cause be, and the same is hereby remanded to said commissioners to the end that they may forthwith make and file a new report in said cause, in accordance with the statute in such cases made and provided."

On 10 January, 1929, they made the following report:

"We visited the premises of the owners, and after taking in the following considerations, the quantity and quality of the land aforesaid, the actual fencing likely to be occasioned by the work of the corporation and all other inconveniences likely to result to the owners, we have estimated and do assess the damages, aforesaid, at the sum of $2,000. The aforegoing damages is for an easement for the use of the plaintiff, the Carolina Power and Light Company, through and over the land of the defendants, a width of fifty feet only, as the same is now surveyed, and

staked out through the land of the defendants, and does not include damages that may accrue to the defendants' other land that may accrue to the defendants by reason of the plaintiff or petitioner or its employees in going to and from the easement as surveyed, through and over other lands of the defendants. We have estimated the special benefits which said owners would receive from the construction of the power line through and over the land of the defendants—nothing. We suggest and recommend that the power line of the petitioner be resurveyed and changed so as to enter the lands of the defendants at the bend of the river, just above what is known as Turkey Creek, thence a straight line to the place where the line as now surveyed enters what is known as the Glazener bluffs, and if such location is made the same would in our opinion be of much less damage to the defendants' land than the line as now located, and would be of very little more inconvenience, if any, to the petitioner in building its towers and erecting its power line."

The plaintiff excepted to the report of the commissioners as being excessive and that in the assessment they took into consideration future damages that may arise; that no award for special benefits to the owners were assessed and deducted. That award was made to the owners for injuries resulting to adjacent lands and no damages can or will result therefrom.

The defendant owners excepted on the ground that the damages were inadequate. "That the commissioners in making their findings as to damage, failed to take into consideration the damage to the property of the defendant other than the value of the actual land taken for the power line." That the width of the land was inaccurate, as more was customarily taken; that the commissioners had no power to recommend a change in the line; that the location was unjust as it passes through the middle of defendants' land and would entirely destroy the value of defendants' land for industrial purposes and greatly diminish the value of the land for agricultural purposes; that the report is ambiguous.

The clerk, on 28 January, 1929, overruled the exceptions of both plaintiff and defendants, and confirmed the report. Both parties objected and excepted and appealed to the Superior Court, and the cause was transferred to the civil issue docket.

The defendants set forth a long motion and petition, which we need not repeat, alleging certain irregularities, as theretofore mentioned in the exceptions to the decree, and other irregularities and wrongs, from which they appealed and prayed: "(1) That said attempted decree of confirmation and all subsequent proceedings in this cause based thereupon, be vacated and set aside; (2) for costs, and (3) for general relief, including relief by injunction as aforesaid."

The plaintiff in turn answered the petition making denial to defendants' allegations. Judge Schenck, upon the motion and petition of defendants, caused notice to issue to plaintiff to appear on 1 April, 1929, at Brevard, N. C., to show cause why the relief of defendants' petition should not be granted. The matter was duly heard before Finley, Judge, at the April Term of the Superior Court of Transylvania County upon the entire record. Also numerous affidavits appear in the record. Defendants contending, among other things, that the line had been changed from that which was originally called for in plaintiff's petition, and defendants also contending in substance that they were entitled to an appraisal by the commissioners as to the injury or damage to the whole tract of defendants' land. This was denied by plaintiff.

Judge T. B. Finley rendered the following order and judgment: "The motion and petition of the defendants, petitioners, to vacate and set aside the judgment of the clerk of the Superior Court, confirming the report of the appraisers and for an interlocutory injunction for the causes and purposes alleged in said petition, coming on for hearing and being heard before his Honor, T. B. Finley, judge presiding, on 6 April, 1929; it is upon motion of counsel for plaintiff, ordered and adjudged that the motion and relief demanded in said petition of the defendants, petitioners, be and the same is hereby refused and disallowed."

The defendants excepted and assigned error to the judgment as signed and appealed to the Supreme Court.

*R. F. Phillips, William E. Breece and Rollins & Smathers for plaintiff.*

*Hamlin & Kimzey, Ralph R. Fisher and Carter & Carter for defendants.*

CLARKSON, J. It appears that plaintiff has completed the erection of its transmission line across defendants' land, so the question of injunction now becomes a mooted or academic discussion. *Glenn v. Culbreth,* 197 N. C., 675.

The final judgment or decree was rendered by the clerk on 28 January, 1929, and the record discloses the following: "From the foregoing decree both petitioner and defendants object and except and appeal to the Superior Court. Notice of appeal by both parties given and waived in open court, and this cause is thereupon transferred to the civil issue docket, and all papers heretofore filed in this cause are herewith sent. This 29 January, 1929. Roland Owen, clerk Superior Court."

The present condemnation proceedings was instituted under C. S., chs. 32 and 33. Chapter 32 gives the law in reference to the acquisition and condemnation of property for electric, telegraph and power com-

panies. C. S., ch. 33, is the chapter on "Eminent Domain." Under chapter 32, we find C. S., 1702 : "The proceedings for the condemnation of lands, or any easement or interest therein, for the use of telegraph, telephone, electric power or lighting companies, the appraisal of the lands, or interest therein, the duty of the commissioners of appraisal, the right of either party to file exceptions, the report of commissioners, the mode and manner of appeal, the power and authority of the court or judge, the final judgment, and that manner of its entry and enforcement, and the rights of the company pending the appeal, shall be as pre-scribed in Article 2, entitled 'Condemnation Proceedings,' of the chapter Eminent Domain."

Under chapter 33 we find, C. S., 1723, in part: "Within twenty days after filing the report the corporation or any person interested in the said land may file exceptions to said report, and upon the determination of the same by the court, either party to the proceedings may appeal to the court at term, and thence, after judgment, to the Supreme Court. The court or judge on the hearing may direct a new appraisal, modify or confirm the report, or make such order in the premises as to him shall seem right and proper. If the said corporation, at the time of the appraisal, shall pay into court the sum appraised by the commissioners, then and in that event the said corporation may enter, take possession of, and hold said lands, notwithstanding the pendency of the appeal, and until the final judgment rendered on said appeal," etc.

C. S., 1724, is as follows: "In any action or proceeding by any rail-road or other corporation to acquire rights of way or real estate for the use of such railroad or corporation, and in any action or proceeding by any city or town to acquire right of way for streets, any person in-terested in the land, or the city, town, railroad or other corporation shall be entitled to have the amount of damages assessed by the commis-sioners or jurors heard and determined upon appeal before a jury of the Superior Court in term, if upon the hearing of such appeal a trial by a jury be demanded."

Condemnation proceedings are statutory and as the right to take private property for public use is given, the rule of strict construction ordinarily applies. *Board of Education v. Forrest,* 193 N. C., 519.

One of defendants' exceptions to the report of the commissioners is on the ground "That the commissioners in making their findings as to damage, failed to take into consideration the damage to the property of the defendants other than the value of the actual land taken for the power line." The record discloses that defendants filed exceptions, and among others the above. The clerk overruled the exceptions and con-firmed the report. Defendants objected and excepted and appealed to the Superior Court, and the cause was transferred to the civil issue

docket. See *Ayden v. Lancaster,* 195 N. C., 297; *Electric Co. v. Light Co.,* 197 N. C., 766. The defendants filed a long motion and petition in the cause, among other things asking injunctive relief. The matter was heard on the record proper and numerous affidavits before the court below in term.

From a careful reading of the report of the commissioners, we do not think in the appraisal the commissioners took into consideration in fixing the compensation for the land taken as described in the petition, the injury done to the other land of defendants. At least the report is uncertain, indefinite and ambiguous. *Wood v. Jones, ante,* 356.

Under C. S., 1723, *supra,* we find "The court or judge on the hearing may direct a new appraisal," etc. The exception of defendants embodied a substantial right. The commissioners should have, in ascertaining what is just compensation, applied the following rule:

(1) What compensation is the defendant entitled to recover of the plaintiff, on account of taking the land described in the petition for the erection of its transmission line across defendants' land?

(2) What compensation is the defendants entitled to recover of the plaintiff for the injury and damage, if any, to their other land by reason of the taking of said land and erection of its transmission line across defendants' land?

(3) What special benefits will defendants receive peculiar to their land and not in common with the other landowners in the vicinity by reason of the erection by plaintiff of its transmission line across defendants' land? *Ayden v. Lancaster,* 197 N. C., 556.

The question involved: Should the court below, under C. S., 1723, have directed a new appraisal and remanded the proceedings to the clerk to that end or did the Superior Court have the discretion to have these issues tried *de novo* in the Superior Court? We think the court below had discretion in the matter. C. S., 637, is as follows: "Whenever a civil action or special proceeding begun before the clerk of the Superior Court is for any ground whatever sent to the Superior Court before the judge, the judge has jurisdiction; and it is his duty, upon the request of either party, to proceed to hear and determine all matters in controversy in such action, unless it appears to him that justice would be more cheaply and speedily administered by sending the action back to be proceeded in before the clerk, in which case he may do so." Under this section the judge now has final jurisdiction to determine the whole matter in controversy. *Lictie v. Chappell,* 111 N. C., 347, 16 S. E., 171; *Faison v. Williams,* 121 N. C., 152, 28 S. E., 188; *Oldham v. Rieger,* 145 N. C., 254, 58 S. E., 1091; *Hall v. Artis,* 186 N. C., 105, 118 S. E., 901. The court has the right in its discretion to remand the cause to the clerk for further proceedings. *York v. McCall,* 160 N. C.,

276, 280, 76 S. E., 84; Michie N. C. Code, 1927, p. 250-1; *Little v. Duncan,* 149 N. C., 84. See C. S., 536; *McNair v. Yarboro,* 186 N. C., 111.

Construing C. S., 1723, with C. S., 637, we think on appeal to the Superior Court the matter was in the sound discretion of the court to remand the proceeding to the clerk or for trial *de novo*. If in the discretion of the court below the proceeding is not remanded, the defendants have the right of a jury trial "if upon the hearing of such appeal a trial by a jury be demanded." C. S., 1724.

In *Ayden v. Lancaster,* 195 N. C., at p. 299, speaking to the subject: "The appeal of defendants from the order of the clerk confirming the report of the commissioners brought into the Superior Court the entire case, where the jury trial must be had *de novo* so far as the question of damage is concerned." In that case defendants demanded a jury trial.

Mr. McIntosh, in North Carolina Practice and Procedure, at p. 63-64, states the matter as follows: "As a department of the Superior Court, the clerk has jurisdiction to hear and determine certain cases which do not come before the judge in the first instance, such as matters of probate and special proceedings; and it became necessary to determine whether the appellate jurisdiction in such cases was derivative, as in appeals from other courts. It was first held that if a case was improperly brought before the clerk, when it should have been before the judge at term, and it came before the judge by appeal, all necessary amendments would be made and the jurisdiction retained; but if the case was properly before the clerk, and came before the judge on appeal, an amendment could not be made to include matters over which the clerk would have had no jurisdiction. It was also held that when an appeal came before the judge from the clerk, and further action was necessary, the judge should decide the question presented for review and remand the case to the clerk. To prevent the confusion thus arising in different departments of the same court, it was enacted in 1887 that, when any case begun before the clerk is, 'for any ground whatever,' sent before the judge, he may proceed to hear and determine all matters in controversy, or may, in his discretion, remand the case to the clerk. By reason of this statute, it is held that the appellate jurisdiction is not derivative in any case, even when the clerk had no jurisdiction, but the case is still in the same court for review and for such other action as may be necessary."

The refusal of the court to vacate and set aside the judgment of the clerk and to order a new appraisal does not deny appellants the right to have the matters determined by a jury in the Superior Court.

For the reasons given, the judgment of the court below is

Affirmed.