FLORIDA POWER & LIGHT COMPANY, a corporation, *Plaintiff in Error*, vs. STATE OF FLORIDA, on the relation of THOMAS J. J. MALCOLM and ROSE G. HAMEL, by her husband and next friend, LOUIS J. HAMEL, *Defendants in Error*.

144 So. 657.

Division B.

Opinion filed November 25, 1932.

*Loftin, Stokes & Calkins,* for Plaintiff in Error;
*Louis J. Hamel* and *Wm. E. Clark,* for Defendant in Error.

DAVIS, J.—In this case the Florida Power & Light Company was made respondent in a mandamus proceeding brought by relators, as owners of certain tenant occupancy buildings, to compel it to remove its individual electric current and gas meters, and to install in place of such individual meters so removed, master meters to register the aggregate quantity of electric current or gas supplied to all of the tenants in the buildings owned by relators, and to furnish without interference therewith a safe, adequate and proper supply of electric current and gas through said respective master meters, and to charge the whole amount of electric current or gas consumed in and about each of relators' buildings, leaving each of the relators to deal with and handle as to the tenants, the electric current or gas supplied to each of relator's buildings, as such relators might see fit.

Peremptory writ of mandamus was awarded as prayed, and respondent took writ of error to this Court.

It is admitted here by plaintiff in error that the Florida Power & Light Company is a public service corporation engaged in supplying gas and electric energy pursuant to a franchise from the City of Miami, and that there is such a legal duty resting upon that company with respect to the discharge of its public undertaking, that it is enforceable by mandamus when performance has been refused.

It is the general rule in this State as well as most, if not all, of the others, that a corporation which occupies streets and highways, with its mains, pipes or wires, and is engaged in the business of furnishing gas or electricity

for light, heat, fuel or power, is under a legal duty to supply the same to any person who applies therefor and complies with its reasonable regulations, and if it wrongfully refuses to do so, mandamus will lie. 38 C. J. 817, Section 503; State ex rel. Ellis v. Tampa Water Works, 57 Fla. 533, 48 Sou. Rep. 639, 22 L. R. A. (N. S.) 680; Woodbury v. Tampa Water Works Co., 57 Fla. 243, 49 Sou. Rep. 556, 21 L. R. A. (N. S.) 1034; Portland Natural Gas & Oil Co. v. State ex rel. Keen, 135 Ind. 54, 34 N. E. 818, 21 L. R. A. 639; State ex rel. Wood v. Consumers' Gas Trust Co., 157 Ind. 345, 61 N. E. 674, 55 L. R. A. 245; Cox v. Malden & Melrose Gas Light Co., 199 Mass. 324, 85 N. E. 170, 17 L. R. (N. S.) 1235; State ex rel. Mason v. Consumers' Power Co., 119 Minn. 225, 137 N. W. 1104, 41 L. R. A. (N. S.) 1181, Ann. Cas. 1914B 19; North Carolina Public Service Co. v. Southern Power Co., 180 N. C. 335, 104 S. E. 872.

But before mandamus will be awarded, it must be shown that the reasonable rules and regulations of the company have been or will be complied with, or the peremptory writ will be denied.\* So the proposition in this case is whether or not the peremptory writ should have been ordered, when the respondent public service corporation answered and established as its defense in bar thereof, that the relators had announced and persisted in their refusal to abide by the company's regulation prohibiting remetering of the gas or electric energy furnished.

In the absence of special statutory regulations setting up some special system for dealing with the subject, the rule usually followed by the Courts is to hold justifiable a regulation which is made by a public utility company in good faith, and enforced by it without discrimination, unless it is plainly unreasonable or outrageous in its gen-

---

\*This rule, of course, is not applicable where public service commissions are vested with jurisdiction to prescribe and enforce service supply regulations.

eral operation. Whether the Court might itself have done differently, or even if it sees hardships in particular cases, is not enough to induce the courts to set a regulation aside or hold it no justification. Wyman on Public Service Corporations, Sec. 860; American Lighting Co. vs. Public Service Corp., of New Jersey, 132 Fed. 794; Holmes Electric Co. vs. Carolina Power & Light Co., 197 N. C. 766, 150 S. E. 621.

The ordinances of the City of Miami authorized the Florida Power & Light Company to prescribe reasonable rules and regulations for the management, operation and control of the service. Acting under the power thus given, the company duly adopted and promulgated a regulation to the effect that gas service purchased from the company should be used by the consumer only for the purposes specified in the application for service, and that electric service purchased from the company should be used by the consumer only for the purpose specified in the application for service, and not sold or otherwise disposed of by the consumer. There was a further regulation prohibiting the consumer or the consumer's agent from re-metering either gas or electricity for the purpose of selling or otherwise disposing of either gas or electric service to the tenants or lessees or others with whom the person applying for service might deal.

That the relators were unwilling to abide by these regulations was established. So the only justification for the award of a peremptory writ of mandamus to compel the furnishing of the service in the face of a refusal to accept and abide by the regulations, must be found in a legal right on relators' part to have them declared void as being unreasonable, unauthorized or purely arbitrary as applied to them.

In our opinion no such justification for disregarding the regulations was sufficiently made to appear in this case,

and therefore the award of the peremptory writ of mandamus to compel the respondent public utility company to render the service in disregard of its regulation was reversible error.

Relators were shown to be owners of buildings occupied by tenants and lessees. They had entered into a gas and electric service arrangement with an outside corporation described as the Meter Service Corporation. Under the plan of operation relators proposed to follow, they would purchase from the Florida Power & Light Company gas and electric service at wholesale prices as determined by one master meter for each service. Thereafter the Meter Service Company would install and maintain inside the building for the benefit of relators individual meters by which the gas and electric service would be resold by the landlord to his tenants or lessees at retail prices. This was a practice proposed to be carried on directly in the face of the company's regulation against re-metering and re-sale, and the only justification asserted to sustain it was that relators as consumers entitled to gas and electric service, were entitled to be furnished such service in wholesale or retail quantities, as they desired, and that after the service was delivered, it was of no concern to the Florida Power & Light Company what relators, as consumers, did with the commodity that they had purchased and paid for according to the master meters.

This contention, however, overlooks the proposition that the right to fix a reasonable rate of charge for public utility service, such as gas, water and electricity, must necessarily include the right to state what shall be the basis for application of the rates, and where the rate charged is graduated according to quantity consumed, or purpose for which it is to be used, the limitation on the use is essentially as much a part of the rate as the amount charged per unit

for what is used. It is therefore sufficient to say that there is ample legal justification for regulation of rate practices, as well as rate scales, to be drawn from the general power to determine and prescribe reasonable rates to be charged for the service furnished.*

In this case, we are of the opinion that the company had the lawful right to fix its rates at such reasonable level, and set them up in such a rate scheme or structure, that the service charges, when reasonably applied without unjust discrimination, would result in a rate scale whose incidence on the user would be governed and largely controlled by the manner or purpose of use of the gas or electricity furnished. There is nothing unreasonable in such a system. Indeed it is a common rate practice to prescribe a rate with limitations on use as a controlling factor for determining its availability or measure.

It is entirely lawful and reasonable, in the absence of a valid statute or franchise obligation to the contrary, for a public utility company to refuse to extend its service to one who proposes to resell it in competition with it, even though he might seek to obtain only the finished product delivered at his door. Rogers Iron Works, Inc. v. Joplin Waterworks, 323 Mo. 122, 18 S. W. (2nd Series) 420; Paxon & H. Irr. Canal & L. Co. v. Farmers & M. I. & L. Co. 45 Neb. 884, 64 N. W. 343, 29 L. R. A. 853, 50 Am. St. Rep. 585; Junction Creek & N. D. & I. Ditch Co. v. City of Durango, 21 Colo. 194, 40 Pac. 356; Holmes Electric Co. v. Carolina Power & Light Co., 197 N. C. 766, 150 S. E. 621.

A public utility company's right to fix its own rates also

---

*For example, it is a common practice to fix a low rate for electrical energy when furnished to be used as power. Authority to fix a lower rate for power purposes than is charged for other purposes, of necessity embraces authority to adopt and enforce reasonable regulations limiting the use of power electricity to power purposes. If this were not so, such a rate would be unworkable in practice, and easily evaded to the prejudice of the company's general rate structure.

includes the right to so prescribe and enforce them that all the company's dealings will be with the real purchasers and users of its service, without submitting to the requirement of delivering its service through the medium of a third party over which the company would have no control.

The Attorney General of the State has appeared in this proceeding in the Supreme Court, seeking on behalf of the State's interest in the subject matter of the controversy, a reversal of the judgment of the court below, because of the question of public policy involved which would be determined adversely to the public interest, should it be held that the defendants in error as apartment house owners in the City of Miami, have the legal right to demand installation of a master meter in order that they might acquire and sell to the tenants in their buildings gas and electricity at such rates as they might see fit to charge, and thereby possibly put the regulation thereof beyond the control of the public authorities having jurisdiction over the subject matter of reasonable rates to consumers of public utility services.

Whether or not the power to regulate public utility rates and service would, under Section 30 of Article XVI of our State constitution, if put into effect by statute, be broad enough to authorize the regulation of sub-metered or resold service supply, is not necessary to be decided in this case, therefore, no opinion is expressed thereon. It is sufficient to say that in the case now before us the sole proposition in issue is the right of the defendants in error to compel the delivery to them of gas and electricity to be used as they might see fit, regardless of any reasonable regulations of the company to the contrary, and this question, as we have seen, has been decided adversely to any such right.

The judgment of the court below, being in contravention

of the principles of law hereinbefore discussed by us, is erroneous and must be reversed.

Reversed and remanded for further proceedings not inconsistent with this opinion.

WHITFIELD, P.J. AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., concurs in the opinion and judgment.

Filed under Rule 21A.