KINGMAN WATER COMPANY, a corporation, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15678.

United States Court of Appeals Ninth Circuit.

March 18, 1958.

---

Fuller Warren, Miami Beach, Fla., Harry L. Durant, Miami, Fla., for appellant.

James L. Guilmartin, U. S. Atty., O. B. Cline, Jr., David C. Clark, Jr., Asst. U. S. Attys., Miami, Fla., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

Brice I. Bishop, Donald R. Kunz, Phoenix, Ariz., for appellant.

Jack D. H. Hays, U. S. Atty., Robert O. Roylston, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before STEPHENS, Chief Judge, and HEALY and FEE, Circuit Judges.

HEALY, Circuit Judge.

During the late World War a government housing unit was built in Mojave County, Arizona, by the Housing Authority, an agency authorized to operate housing projects under lease to the Federal Government. The project consisted of 31 houses containing altogether 120 units. The Government was responsible for securing water for the project. Appellant is a public utility supplying water for the area in which the project was located.

Under Arizona law a schedule of the rates of a public utility is required to be filed with the Arizona Corporation Commission. Appellant's rates on file with the Commission contained a provision for a $2.50 minimum rate per 3,000 gallons for all connections *metered*.[1] There were in fact installed but four meters which metered all the water coming into the project. The water was then distributed to the houses in the project, there being no individual meters in those houses.

Something like a year before the completion of the project the Government sent a proposed contract to the appellant. The contract contained numerous provisions, one of which would have allowed the Government to resell the water to the dwellers. The proposed contract was rejected by appellant. Apparently oral negotiations were then carried on between representatives of the Government and a representative of appellant, but no written contract emerged from these negotiations. Appellant claims that an oral contract was agreed to whereby, notwithstanding the water went only through the master meters, the Government would be billed *as if* there were meters in each dwelling unit. The Government denies that any such contract was made; and the trial court rejected a finding proposed by appellant to the effect that there was an oral contract under which the water was delivered.[2]

When in 1944 the project was put into operation, the Government was charged on the basis as though each unit had a meter. This practice continued until 1951 when a written agreement was concluded between the parties in which the $2.50 minimum was discarded. The Government then brought this suit to recover the difference between the billings as paid and those claimed by it to be properly payable over the seven-year period.

The trial court granted judgment in favor of the Government. It found that during the approximately seven-year period involved the appellant, in its capacity as a public utility, delivered water to the housing project through the four meters installed and billed the Government solely on the amounts appearing on the meters, but that it made its charges as though there were a separate meter in each of the 120 units. It found, also, that as a result of this practice the Government was overcharged in the amount of $15,824 during the period.

---

1. Naturally, the rates for water delivered above that gallonage progressively decreased.

2. The court did make a finding to the effect that the Government entered into a contract with the defendant for the supplying of the water, but this finding evidently refers to the implied contract to pay the legal rate upon receiving delivery of water.

The court concluded, as a matter of law, that any agreement between the parties for water services at a rate different from that filed by the appellant with the Arizona Corporation Commission would be void; and that any ambiguity in the filed rate must be resolved against the appellant. Judgment was granted in favor of the Government in the amount of $14,813.19.[3]

Appellant argues, first, that it was not acting as a public utility in supplying water to this housing project; second, that if it were so acting, the rates on file, correctly construed, allow the charges made; and, third, that money voluntarily paid by the Government can not be recovered when it is paid on the basis of a mistake of law.

For the first proposition appellant relies largely upon the holding in City of Phoenix v. Kasun, 54 Ariz. 470, 97 P.2d 210, 127 A.L.R. 84. That case involved a municipality which operated a water system for its own inhabitants and in addition furnished water on contract to certain users outside the city limits, one of these outsiders being Kasun. The city proposed to increase the rates for these services, and Kasun sought an injunction enjoining such increase on the ground that the proposed rates were unreasonable. The Arizona court held that the municipality had no legal duty to supply one in Kasun's situation. The decision is clearly not in point inasmuch as here appellant was a public utility under the duty of supplying water for the area in which the project was located.

Several cases are cited by appellant for the proposition that a public utility has no duty to sell its product wholesale to someone who intends to resell it at a profit. The cited cases are named on the margin.[4] They are not in point inasmuch as there is here no evidence that the Government sold at a profit. Appellant calls attention to the proposed contract proffered by the Government where the right to resell was reserved. But appellant rejected this proposed contract. Thus there would appear to be no basis for arguing that appellant was not required to supply water. In any event there was here no finding that a contract was entered into providing for the terms on which appellant billed the Government.

■ As to the second contention, appellant argues that, properly construed, the rates on file permit it to charge "as if" there were a meter at each house. This interpretation was rejected below— properly so, we think. Appellant drew up the rates on file. They state "all connections metered * * * $2.50 minimum rate of 3,000 gals." While there may be some obscurity here, the ambiguity is to be resolved against the drafter.

■ The third argument is that money voluntarily paid over under mistake of law is not recoverable. A case or two to that effect is cited. However, the rule apparently does not apply to the Government. See Brooklyn & Richmond Ferry Co. v. United States, 2 Cir., 167 F.2d 330. The Supreme Court in United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 638, 82 L.Ed. 932, states:

"The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid * * * The Government's right to recover funds, from a person who received them by mistake and without right, it not barred unless Congress has 'clearly manifested its intention' to raise a statutory barrier."

Affirmed.

---

3. The difference between the total overcharge and the judgment is covered by billings for June and July, 1951, totaling $1,011.14, which were not paid by the Government.

4. Sixty-Seventh South Munn v. Board, 106 N.J.L. 45, 147 A. 735; Lewis v. Potomac Electric Power Co., 62 App.D.C. 63, 64 F.2d 701; Florida Power Co. v. State, 107 Fla. 317, 144 So. 657.